IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH LYNNE HUTCHINSON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. CV-06-00700-WHA |
| | ) |
| PHENIX CITY BOARD OF EDUCATION, et al | ) |
| | ) |
|     Defendants. | ) |

**NARRATIVE SUMMARY OF UNDISPUTED FACTS AND
BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Come now the Defendants, Phenix City Board of Education and Larry E. DiChiara, and submit the following Narrative Summary of Undisputed Facts and Brief in Support of Motion for Summary Judgment, respectfully requesting that the Court enter judgment in the Defendants' favor as to all claims stated by Plaintiff.

**NARRATIVE SUMMARY OF UNDISPUTED FACTS**

1. The Plaintiff, Elizabeth Lynne Hutchinson (hereinafter referred to as "Hutchinson') is a white female.

2. The Defendant, Phenix City Board of Education (hereinafter referred to "Board") is a local agency of the State of Alabama duly constituted pursuant to *§ 16-11-1 et seq., Ala. Code* and is charged with the duty and responsibility of employment and dismissal of all school personnel subject to state and federal laws.

3. The Defendant, Larry E. DiChiara (hereinafter referred to as "DiChiara") is a white male and is currently employed by the Defendant, Board as its Superintendent.

4. The employment application which Hutchinson completed contained at the top right corner of the first page, the statement "Discrimination on the basis of race, sex, ethnic origin, creed or physical disability is prohibited." (See Exhibit A).

5.	Hutchinson was initially hired by PCBOE for the school year 2003-2004, with a beginning employment date of July 30, 2003 and an ending employment date of May 19, 2004. Her job title was child nutrition program worker (hereinafter referred to as "CNP") assigned to South Girard School. (See Exhibit B)

6.	The manager of the South Girard Cafeteria for the school year 2003-2004 was Beverly Walker, a black female, now deceased. The Assistant Manager for that location and that year was Dorothea McKissic, a black female.

7.	Hutchinson was reemployed for the school year 2004-2005 to continue serving as a CNP worker at South Girard School. Her dates of employment were July 2004 through May 19, 2005. (See Exhibit C).

8.	The Cafeteria Manager of South Girard School for the 2004-2005 school year was Brenda Densel, (hereinafter referred to as "Densel") a white female. The Assistant Cafeteria Manager for that location and that year was Paula Pritchett, (hereinafter referred to as "Pritchett"), a white female.

9.	For the school year 2003-2004, Hutchinson was one of two white CNP workers without supervisory duties at South Girard and was supervised by a black Manager and black Assistant Manager.

10.	For the school year 2004-2005, Hutchinson was the sole white CNP worker without supervisory duties at South Girard School, and was supervised by a white Manager and white Assistant Manager.

11.	Hutchinson received an injury to her finger on November 9, 2004, while working in the cafeteria at South Girard School. She was taken to the Board's Central Offices by her Manager Densel, and was seen by the school nurse; rendered treatment; and returned to South Girard School.

12.	Later in the afternoon of November 9, 2004, Hutchinson returned to the Board's Central Offices with her husband, Will McCart, (hereinafter referred to as "McCart") and met with Penny Passmore, (hereinafter referred to as "Passmore") a white female, who was the Supervisor of CNP Programs and Jeff Adams, (hereinafter referred to as "Adams") a white male (now deceased), who was Assistant Superintendent for Personnel.

13.	Hutchinson never filed a written complaint detailing her concerns about her job as requested by Adams on November 9, 2004.

14. Hutchinson's employment was not renewed by the Board at its official meeting on May 12, 2005.

15. Hutchinson's last day of employment was May 19, 2005.

16. Hutchinson was a probationary employee under *§ 36-26-100 et seq.*, *Ala. Code*, (also known as the Fair Dismissal Act).

17. Hutchinson has not contested the procedure for her non-renewal under the Fair Dismissal Act.

18. At the end of May or first of June of 2005, following her non-renewal, Hutchinson and her husband, Will McCart, went to DiChiara's office and met with him.

19. Board Policy GAAA is entitled "Equal Opportunity Employment" and provides that ". . . no person . . .shall, on the basis of . . . race, . . . be denied the benefits of, or be subject of discrimination in regard to employment, retention, promotion, transfer, or dismissal. . . ." (See Exhibit D)

## ARGUMENT

### I.

### HUTCHINSON CANNOT PROVE A PRIMA FACIE CASE BY A PREPONDERANCE OF THE EVIDENCE

In her Amended Complaint filed on October 13, 2006 (Doc. #14) Plaintiff sets forth six Counts as follows:

Claim 1 - Race Discrimination in violation of Title VII

Claim 2 – Race Discrimination in violation of *42 U.S.C. § 1981*, by and through *42 U.S.C. § 1983*.

Claim 3 – Race Discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by and through *42 U.S.C. § 1983*.

Claim 4 – Retaliation in violation of Title VII.

Claim 5 – Retaliation in violation of race discrimination in violation of *42 U.S.C. § 1981,* by and through *42 U.S.C. § 1983*.

Claim 6 – Retaliation in violation of the Equal Protection Clause of the *Fourteenth Amendment* of the United States Constitution, by and through *42 U.S.C. § 1983*.

Under Title VII, Hutchinson carries the initial burden of proof of establishing of prima facie case of racial discrimination. In a disparate treatment case she must prove discriminatory animus as the ultimate issue of whether there was intentional discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct .1089 (1981). Proof of a discriminatory motive requires a showing that the employment practice was deliberate and not accidental.

Hutchinson must produce either direct evidence or circumstantial evidence of discrimination. If Hutchinson relies on circumstantial evidence, the burden of proof shifting model outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct.1817 (1973) is to be applied.

For Hutchinson to recover under her claims based on *42 U.S.C. § 1981* and the Fourteenth Amendment to the United States Constitution, both by and through *42 U.S.C.A. § 1983,* she must prove intentional discrimination. Hutchinson must present either (1) direct evidence of discrimination or (2) circumstantial evidence under the burden shifting model of *McDonnell Douglas v. Green*. The courts have held that application of the burden of proof under Title VII and under *§1981* and the Fourteenth Amendment, both by and through *§1983* is the same.

Direct evidence consists of only the most blatant remarks whose intent could be nothing other to discriminate against Hutchinson on the basis of her race. "Evidence of direct evidence is rare …." *Norrell v. Waste Away Group, Inc., 246 F. Supp. 2d 1213, 1220 (M.D. Ala. 2003).*

Direct evidence does not include stray remarks in the workplace by other employees or statements by non-decisional makers. Statements by non-decision makers cannot be considered direct evidence. *Eska v. Provident Life & Accident Ins. Co., 125 F.3d 1406 (11th Cir. 1997); Steger v. Gen. Elec. Co., 318 F.3d 1066 (11th Cir. 2003); Norrell, 246 F.Supp 2d at 1225.*

Hutchinson cannot present any direct evidence of racial discrimination against either of the Defendants. In her deposition of March 8, 2007, Hutchinson was asked to identify the employees whom she had alleged made racists comments to her.

Q. Was Betty the only individual who made comments to you about white people?

A. Yes, ma'am.

Q. Did any of the other employees ever make comments to you about white people?

A. No, ma'am.

Q. The first year?

4

      A. No, ma'am. It was just Betty only.

      Q. The second year too?

      A. Yes, ma'am

Hutchinson Deposition, p. 92, lines 5-15.

(All references to the Deposition of Hutchinson are contained in attached Exhibit E.)

    Hutchinson is referring to Betty Cliatt, (hereinafter referred to as "Cliatt"), a black female, who was a tenured CNP worker at South Girard Cafeteria and a co-worker of Hutchinson. By her own testimony in the excerpt quoted above Hutchinson has limited her claims for hostile work environment to those of her co-worker, Cliatt. When asked about any racial comments made by Cliatt, Hutchinson stated "Betty likes to run her mouth, always criticizing the white people; that all white people are nothing but white trailer trash. Hutchinson Deposition, p. 78, lines 1-4. These comments by Cliatt are stray remarks in the workplace and are statements made by a non-decision maker. The comments do not rise to the level of being blatant remarks against Hutchinson which would allow Hutchinson to prove intent to discriminate on the basis of her race.

    Neither of the Defendants knew Hutchinson other than the fact that she was on a list supplied by Adams, the Assistant Superintendent of Personnel, to DiChiara and on the recommendation of DiChiara to the Board. DiChiara testified that he knew that Hutchinson was on a list for non-renewal, but he had never met with Hutchinson or made any effort to find out why Hutchinson was being recommended for non-renewal. DiChiara Deposition, p. 47, lines 19-23; p. 48, lines 1-23; p. 49, lines 1-23; and p. 50, lines 1-7. (All references to the Deposition of DiChiara are contained in attached Exhibit F.) Lori White (hereinafter referred to as "White"), the Board Vice-President, and Board representative for purposes of this litigation, testified that she had no knowledge of Hutchinson prior to the lawsuit in question and that the Board, to the best of her knowledge, relied on the recommendation of Defendant DiChiara to non-renew Hutchinson's contract. The Board did not conduct any independent investigation of Mrs. Hutchinson. White Deposition, p.24, lines 1-23. (All references to the Deposition of White are contained in attached Exhibit G.)

    Being unable to produce any direct evidence of discrimination, Hutchinson must follow the *McDonnell Douglas* and *Burdine* burden-shifting framework to establish a prima facie case

of racial discrimination by a preponderance of the evidence based on circumstantial evidence. *McDonnell Douglas, 411 U.S. 802.*

## HOSTILE WORK ENVIRONMENT

The burden of proof Under Title VII § 1991 and the Fourteenth Amendment for a <u>hostile work environment</u> claim requires proof that "the workplace is permeated with discriminatory intimidation, ridicule, insult that is sufficiently severe or pervasive to alter the conditions of the victims employment and create an abusive working environment." *Harris v. Forklift Systems, Inc., 510 U.S .17, 21, 114 S.Ct. 367, 370 (1993).* To establish a hostile work environment claim Hutchinson must show that 1) she belonged to a protected group; 2) that she was subjected to unwelcome harassment; 3) that the harassment was based on race; 4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatory abusive work environment and (5) that the Board and DiChiara are responsible for such an environment under either a theory of vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc., 277 F.3d. 1269, 1275 (11th Cir. 2002).*

The Eleventh Circuit in *Miller v. Kenworth* requires that to fulfill the fourth requirement of sufficiently severe or perverse conduct which alters the terms of her employment; Hutchinson must prove both an objective and a subjective component. The factors to be considered in determining the objective severity of the harassment include 1) the frequency of the conduct; 2) the severity of the conduct; 3) whether the conduct is physically threatening or humiliating or a mere offensive utterance;  and 4) whether the conduct unreasonably interferes with the employee's job performance. *Id. 277 F.3d. at 1276.* When the facts of this case are applied to those four requirements, Hutchinson fails to prove by a preponderance of the evidence, the objective component. The conduct was not severe; the comments were made by a co-worker who not a decision maker; the conduct was not physically threatening and Hutchinson was able to perform her job. Densel, the Cafeteria Manager, testified in her deposition on April 10, 2007, that Hutchinson was a good employee, always did her job and followed directions. Densel Deposition, p.22, lines 3-11. (All references to the Deposition of Densel are contained in attached Exhibit H.) Because Hutchinson has failed to prove the objective component, the issue of her subjective feelings is mute.

6

## RETALIATION

To establish a prima facie case of <u>retaliation</u>, the Eleventh Circuit decisions require that Hutchinson prove by a preponderance of the evidence that (1) she was engaged in a protected activity; (2) that her employer was aware of her engagement in that protective activity; (3) that she suffered an adverse employment action; and (4) that there was a causal connection between her engagement in the protected activity and the adverse employment action. *Maniccia v. Brown, 171 F. 3d 1364 (11th Cir. 1999).* As to the first required element of proof, this Court has held that "[t]he relevant question [is] . . . whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting an unlawful discriminatory manner." *Hill v. IGA Food Depot, et al., 2006 U.S. Dist. Lexis 80455 (M.D. Ala. 2006).* "[T]he employee must, at the very least, communicate [his] belief that discrimination is occurring to the employer. It is not enough for the employee merely to complain about a certain policy or certain behavior of coworkers and rely on the employer to infer that discrimination has occurred." *Id. at *17.* Hutchinson cannot produce sufficient evidence to satisfy the burden of production by a preponderance of the evidence. Hutchinson has testified that she reported the comments of Cliatt to both Densel and Pritchett. Hutchinson Deposition, p. 79, lines 2-6. However, when asked specifically if she told Densel that Cliatt treated her differently because she was white, Hutchinson replied:

> "Q. Did you say to Brenda Densel that Betty treats me differently because I'm White?
>
> Mr. De Gwek: Object to the form.
>
> A. I can't recall.
>
> Q. What did you say, specifically, to Brenda Densel then about Betty's conduct?
>
> A. I had spoke to Brenda about Betty's comments, about all white people are trailer trash."
>
> Hutchinson Deposition, p. 88, lines 7-18.

Densel, in her deposition, testified that Huchinson would come in her office to tell her things, but Densel specifically denied that Hutchinson complained to her about having problems working with Cliatt. Densel further testified that she had not heard any comments that were racist or that referenced "trailer trash." Densel Deposition, p. 24, lines 1-23; p.25, lines 1-7; and p. 26, lines 1-16.

Pritchett testified in her deposition that Hutchinson would complain, but that those complaints were mumblings about certain working condition and were not about race. Pritchett had never heard about "white trailer trash" or other comments which would be considered racist. Pritchett Deposition, p.17, lines 6-23; p. 18, lines 1-23; and p. 19, line1. (All references to the Deposition of Pritchett are contained in attached Exhibit I.)

Hutchinson cannot prove by a preponderance of the evidence that she engaged in a protected activity.

The fourth element that Hutchinson must prove in support of her claim of retaliation is that there was a causal connection between her engagement in a protected activity and the adverse employment action. Defendants deny that Hutchinson engaged in a protected activity, but assuming for the sake of argument that she did, Hutchinson cannot prove a causal connection between that activity and her non-renewal. As set out in the discussions above, Densel is the individual who made the initial recommendation of non-renewal based on "safety reasons" resulting from the conduct of Hutchinson's husband McCart. This recommendation was made to Passmore and agreed with by Sparks. Adams made the recommendation to DiChiara, the Superintendent. Under Alabama law the Board has the sole authority to hire and non-renew. As testified to by Board Vice-President White, the Board relied upon the recommendation of the Superintendent, who had relied upon the recommendation of Adams.  There is no causal connection between the Board's actions and any comments made by Cliatt. Any comments made by Cliatt were "stray comments" made by a "non-decision maker." "Plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co., 197 F. 3d 1332 (11th Cir. 1999); Hill v. IGA Food Depot at \*19.*

Assuming for the sake of argument that Hutchinson has established a prima facie case, the burden shifts to the Defendants.  In cases involving a black claimant there is a presumption of unlawful discrimination once a prima facie case is established. However, in at lease one Circuit, the presumption of discrimination does not exist if the claim is by a white plaintiff.  *Reynolds v. School District No. 1, Denver, Colorado, et al., 69 F.3d 1523 (10th Cir. 1995)*.  In that case the Tenth Circuit Court of Appeals modified the requirements of a prima facie case of reverse demonstration and held that the white plaintiff did not deserve the presumption of discrimination.

8

"Reynolds does not necessarily deserve the presumption of discrimination afforded to a member of an ostensibly disfavored minority class." *Id. p. 1534.*

Defendants to meet their burden of proof must articulate a legitimate non-discriminatory reason for the decision to non-renew Hutchinson. *Norrell v. Waste Away Group, Inc., 246 F. Supp .2d 1213 (M.D. Ala., February 26, 2003).* The evidence is undisputed that Densel made the initial decision for the non-renewal of Hutchinson at the end of her second year employment contract. Densel has testified that the decision to non-renew Hutchinson was her decision. Penny Passmore, the CNP Supervisor, and Sparks, the Principal, agreed with her decision. Densel Deposition, p. 52, lines 8-21. It is undisputed that the reason Densel gave for Hutchinson's non-renewal was "safety reasons". Densel Deposition, p. 47, lines 1-4. This was because of the actions of Hutchinson's husband, McCart, at the late afternoon meeting of November 9, 2004 with Hutchinson, McCart, Passmore and Adams. Densel Deposition, p. 47, lines 5-6. On November 10, 2004, Passmore came to South Girard Cafeteria and described to Densel the actions of McCart the prior afternoon. Densel then expressed safety concerns and made her decision that day that she would not recommend Hutchinson for employment for the next year. Densel Deposition, p. 51, lines 3-18. The testimony of Passmore who was present at the meeting of November 9, 2004 is that McCart was angry and upset at the meeting. Passmore Deposition, p. 98. lines 17-19 and 23; p. 99, line 99. Passmore confirms that the decision to non-renew Hutchinson was made the next morning based on McCart being a threat. She felt the tone of his comments, as well as the comments themselves, during that late afternoon meeting were threatening. Passmore Depo. p.101, lines 7-12. (All references to the Deposition of Passmore are contained in attached Exhibit J.)

Having articulated a legitimate non-discriminatory reason for Hutchinson's non-renewal the Plaintiff must now prove by a preponderance of the evidence that the legitimate reasons offered by Defendants are not true but are merely a pretext for discrimination. *Norrell, 246 F. Supp. 2d at 1222.* Hutchinson cannot rely on conclusory allegations of discrimination. "[T]he Plaintiff must come forward with evidence demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence.'" *Combs v. Plantation Patterns, 106 F. 3d 1519, 1538 (11th Cir. 1997); Gaddis v. Russell Corporation, 242 F. Supp. 2d 1123, 1136 (M.D. Ala. 2003.*

9

ARGUMENT

II.

**DEFENDANTS ARE NOT LIABLE FOR ACTIONS UNDER THE**
**_FOURTEENTH AMENDMENT_, BY AND THROUGH _42 U.S.C. § 1983_**

The United States Supreme Court has held that the doctrine of *respondeat superior* does not apply to claims brought under *42 U.S.C. § 1983*. *Monell v. Department of Social Services of City of New York, 436 U.S. 658 98 S.Ct. 2018 (1978).* In *Worthington v. Elmore County Board of Education, et al., 160 Fed.Appx. 877, 205 U.S. App. Lexus 28674 (11th Cir. 2005),* the Eleventh Circuit has applied this finding to the *Fourteenth Amendment* claim brought pursuant to *§ 1983*. In Worthington, the court goes further to state that to impose liability on a municipal government under *§ 1983* as sought here, a plaintiff must identify the municipal policy or custom causing the deprivations of federal rights. Hutchinson has failed to identify any policy or custom of the Board which had a causal connection to her non-renewal. Further, Hutchinson must prove that the Board acted with deliberate indifference and that such deliberate conduct was the direct causal link between the Board's actions and the allegation by Plaintiff of a deprivation her federal rights. Deliberate indifference requires a degree of culpability in addition to the causal relationship. *Worthington*, *160 F. Appx.at 880-881*. There is no evidence that either the Board or DiChiara had knowledge of the allegations made by Plaintiff and specifically the allegations made against the co-employee, Cliatt. The excerpts from the depositions of White and DiChiara referenced above confirm that neither knew of Hutchinson other than the fact that she was on the non-renewal list. Further, neither Defendant investigated the reason for the non-renewal.

ARGUMENT

III.

**HUTCHINSON WAS A PROBATIONARY EMPLOYEE**
**WITH NO RIGHT OF CONTINUED EMPLOYMENT**

Hutchinson was a classified employee of the Board and her employment was governed by *§ 36-26-100 et seq., Ala. Code*. As set forth in the Narrative Summary of Undisputed Facts, Hutchinson was employed for two years pursuant to employment contracts which are attached hereto as Exhibits A and B. Upon the end of either contract, Hutchinson had no right to be reemployed by the Board. At the completion of the employment contract for the year 2003-

10

2004, the Board offered Hutchinson a new one-year contract which Hutchinson accepted. At the completion of her second contract, Hutchinson's employment ended. The Board chose not to offer Hutchinson a contract for another year of employment. Therefore, Hutchinson was employed by Board for a twenty-four month period. She was not employed for thirty-six months as required under *§ 36-26-101, Ala. Code*, to acquire non-probationary status. As a probationary employee, Hutchinson's employment simply terminated at the expiration of the second contract on May 19, 2005. Both Hutchinson and Board have fulfilled each of their obligations under the contract.

Hutchinson was given notice of non-renewal. However, neither the recommendation nor the Board approval was required to terminate the employment.

*Guise v. Morgan County Bd. of Education*, 516 So. 2d 692, (Ala.Civ.App. 1987) directly addresses the non-renewal of a non-professional public employee. The relevant events in that case transpired prior to the enactment of *§ 36-26-100 et seq., Ala. Code*, known as the Fair Dismissal Act. Scarlett Guise was a non-professional board employee who was not reemployed. She claimed that to be non-renewed required both a recommendation from the superintendent and approval by a majority of the board. The Alabama Court of Civil Appeals found that Guise was employed for a "fixed term, i.e. the school year as noted in the stipulations." The Court further stated that Guise was correct in her contention that reemployment required both a recommendation and board approval. "However, no such statutory requirement exists for non-renewal of an employment contract for a fixed term." Because board policy required notice on non-renewal prior to the last day of school, Guise was notified under that policy that she was not being reemployed. The Phenix City Board of Education does not have a policy requiring that notice of non-renewal be given prior to the expiration of a contract. Therefore, while notice of non-renewal was given Hutchinson such notice is not required by statute, case law or board policy.

In the subsequent case of *Ray, et al. v. Decatur City Board of Education, et al., 723 So. 2d 680 (Ala.Civ.App. 1998),* the Court of Civil Appeals reaffirmed its prior ruling in *Guise. Ray* arose subsequent to the enactment of the Fair Dismissal Act, *§ 36-26-100, et seq.* The Plaintiffs in *Ray* had fixed term contracts and had not attained non-probationary status. The Plaintiffs claimed that they had not received the requisite notice of non-renewal within the required time. Quoting *Guise* the Court stated "no statutory requirement exists for non-renewal of an

11

employment contract for a fixed term ….." *Id. 683.* Each of the Plaintiffs in *Ray* was found to have fixed term contracts and that their contracts terminated on the dates specified in each contract when those contracts were not renewed.

Hutchinson has no constitutional or statutory right to continued employment with the Board. Therefore, her claims based on statutory and constitutional rights are not viable. Board and DiChiara are entitled to summary judgment in their favor.

While this theory is discussed in legal treatises on education, the undersigned counsel has not located a case on non-renewal having been decided by either the Eleventh Circuit Court of Appeals or the United States Supreme Court.

This 7th day of June, 2007.

            SMITH & SMITH
            A PROFESSIONAL CORPORATION
            BY: /s/Sydney S. Smith
            Attorney for the Defendants
            Phenix City Board of Education and Larry E. DiChiara
            1503 Broad Street
            Phenix City, Alabama  36867
            (334) 298-2679
            SMI 078
            ASB-4248-T82S

**CERTIFICATE OF SERVICE**

I hereby certify that I have served the Narrative Summary of Undisputed Facts and Brief in Support of Motion for Summary Judgment upon Plaintiff's counsel, by electronic filing and by email on this 7th day of June, 2007.

> Joshua D. Wilson, Esq.
> Rocco C. Alamusa, Jr., Esq.
> Wiggins, Childs, Quinn & Pantazis, LLC.
> The Kress Building
> 301 19th Street North
> Birmingham, Alabama 35203
> jwilson@wcqp.com
> rcalamusa@wcqp.com

/s/Sydney S. Smith

C-06-042 Narrative Summary & Brief 060707