IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH LYNNE HUTCHINSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO: |
| vs. | ) | CV-06-00700-WHA |
| | ) | JURY DEMAND |
| | ) | |
| PHENIX CITY BOARD OF EDUCATION, | ) | |
| LARRY E. DICHIARA, officially as | ) | |
| as Superintendent of the Phenix City Schools | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT PHENIX CITY BOARD
OF EDUCATION AND LARRY DICHIARA'S MOTION FOR SUMMARY JUDGMENT**

**COMES NOW**, Plaintiff, Elizabeth Lynne Hutchinson, through the undersigned counsel,

and responds to Defendants' Phenix City Board of Education and Dr. Larry E. DiChiara's Motions

for Summary Judgment.

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

The Plaintiff, Elizabeth Lynne Hutchinson, (hereinafter "Plaintiff" or "Hutchinson") contends

that the Defendants, the Phenix City Board of Education (hereinafter "the Board") and Larry E.

DiChiara (hereinafter "DiChiara"), officially as Superintendent of the Phenix City Schools,

terminated her employment because of her race and  in retaliation against her in violation of Title

VII Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended by the Civil

Rights Act of 1991, 42 U.S.C. §1981a (hereinafter "Title VII"); 42 U.S.C. § 1981 (hereinafter "§

1981"); and the Fourteenth Amendment to the Constitution of the United States.  Plaintiff asserts her

claims for relief for the defendants' violations of Title VII, § 1981 and the Fourteenth Amendment through 42 U.S.C. § 1983 (hereinafter "§ 1983").

Plaintiff is a white female who worked with all black co-workers in a predominantly black school and predominantly black neighborhood. Plaintiff suffered a great deal of racial harassment by a black co-worker, Betty Cliatt. Plaintiff made numerous complaints about the racial harassment to her supervisors, including Brenda Densel, the Child Nutrition Program Manager. Furthermore, it is undisputed that Plaintiff went to make a formal complaint of racial harassment and discrimination to her supervisors (Penny Passmore, the Child Nutrition Program Supervisor, and Jeff Adams, the Personnel Director) on November 9, 2004. These same decision-makers, along with Densel, her immediate supervisor, decided to terminate Plaintiff on November 10, 2004, one day after her formal complaint. It is undisputed that Densel and Passmore (with support from Adams and Sparks) made the decision to terminate Plaintiff the day after her formal complaint of discrimination and harassment.(See Doc. #31, p. 9).

The racial harassment continued until the end of Plaintiff's employment and although the formal decision to terminate (or non-renew) Plaintiff was not finalized until the end of the school year in May 2005, the actual decision was made one day after her formal complaint. The fact that none of the Defendants or any agent of Defendants conducted any independent investigation into Plaintiff's complaints coupled with the fact that the decision-makers and supervisors have given inconsistent reasons for her termination is sufficient evidence to establish pretext. There is a clear dispute as the testimony given by Defendants as to the real reason Plaintiff was terminated.

Simply put, this case is not a proper case for summary judgment. The undisputed facts indicate that Plaintiff has stated a proper claim for race discrimination and retaliation. Furthermore,

there are substantial allegations with factual support, which may or not be in dispute, that have created a genuine issue of material fact that require submission to the jury. Therefore, the Defendants Motions for Summary Judgment should be denied.

## II.    SUMMARY OF FACTS

### A.    NARRATIVE STATEMENT OF UNDISPUTED FACTS

#### 1.    Defendant's Narrative Summary of Undisputed Facts

Plaintiff hereby agrees with Defendants' Narrative Summary of Undisputed Facts Paragraphs 1-12; 14-16; 18-19. (See Doc. 31; paragraphs 1-19). Plaintiff disputes the following Paragraphs:

13.    Plaintiff attempted to file a written complaint during her formal complaint to Mrs. Passmore and Mr. Adams, however Plaintiff was not allowed to file a written complaint because Mr. Adams stopped the meeting and told her she needed to get an attorney. (Exh. I).

17.    Plaintiff has filed an EEOC charge and a Federal Lawsuit alleging that her non-renewal violated Federal and Constitutional laws.

#### 2.    Additional Undisputed Facts

##### i.    Background

Hutchinson was a good employee who did her job without performance problems. (Plaintiff's Exh. B; Penny Passmore Depo. pp. 42:5-18)(Plaintiff's Exh. C; Brenda Densel Depo. pp. 22:3-11). On November 9, 2004, Hutchinson cut her hand when a co-worker attempted to grab something from her. Brenda Densel, the South Girard CNP Supervisor, took Hutchinson downtown to see the school nurse. (Densel Depo. pp. 27:1 - 28:18). Densel and Hutchinson then went to talk to Penny Passmore, the Child Nutrition Program Supervisor, whose office was located downtown at the auxiliary building next to the Phenix City Board of Education. (Densel Depo. pp. 28:19 - 29:15). Hutchinson was upset and crying. (Densel Depo. pp. 2-11).

3

ii.    Plaintiff's Formal Complaint of Harassment and Discrimination.

Later that day, Hutchinson and her husband, Will McCart, went to see Passmore again to make a formal complaint of harassment and discrimination.  During this meeting, McCart stated: "She [Hutchinson] needs to fill out a formal complaint about the hostile treatment she's been getting over there for the last couple of months."  (Plaintiff's Exh.I; Taped Transcript of Formal Complaint). Passmore remembers him making this statement.  (Passmore Depo. pp. 88:16 – 89:3).  They asked to speak to Jeff Adams and the Superintendent. McCart then told Jeff Adams, the Principal of South Girard, when Adams walked into the meeting: "She [Hutchinson] wants to file a formal complaint about her treatment – or mistreatment should I say, her work environment."  (Exh. I).

Adams then states: **"You've indicated there's some racial hostility."** (*Id*.)  Hutchinson responded by stating: "That's what I feel like."  Mr. McCart then asked Passmore if she was aware of it and  Passmore stated: "I don't see it when I'm over there.  **I just know that she has mentioned it -- she has mentioned it.**" (*Id*.)

Adams told Hutchinson that in order to set forth a "hostile environment [claim], you need specifics, okay."  (*Id*.)  Hutchinson told them that she had previously told the supervisor (Ms. Densel) about the problems that were going on.  Mr. McCart explained that when she complains, the other employees get made with her.  (*Id*.)  Adams then told her: "well, I mean you just have to turn a deaf ear to it... just ignore them."  (*Id*.)

McCart asked Adams: "So you're not going to do anything about this today?"  Adams responds by asking what her complaint is and McCart again states: "About the treatment and abuse that she's heard from the other ladies over there.  They're well aware of what's been going on."  (*Id*.)

Hutchinson also discussed the possibility of transferring and Passmore had told her in an

4

earlier meeting that she could be transferred or just stick it out and next year may get better.(*Id.*)  The next day [November 10, 2004], Passmore and Densel made the decision to non-renew Plaintiff. (See Doc. #31, p. 9).

### iii.    Plaintiff's Replacement

Plaintiff was replaced by a black female, Mary Carter.   (White Depo. pp. 31:13-22)(Plaintiff's Exh. V; Defendant's Responses to Defendant's Discovery)(improperly identified as Mary Walker).

### iv.    Phenix City Board of Education Policies and Procedures

There is nothing in the Board's policies or procedures regarding racial discrimination or racial harassment or retaliation of an employee. (Plaintiff's Exh. Q: Phenix City Bd.of Educ. Sexual Harassment Policy)(DiChiara Depo. pp. 41:2-14).  The Board's Complaint and Grievance Policy states "the superintendent and/or his representatives shall investigate all complaints, which may be brought against any individual school in the school district, in regard to any alleged discriminatory action for appropriate treatment by the Board."  (Plaintiff's Exh. R; Phenix City Bd. of Educ. Complaint Procedure Policy).  If a complaint is brought to an employee of the Board, the Board has a responsibility to investigate that complaint.  (*Id.*)(DiChiara Depo. pp.42:21 - 43:8).

Dr. DiChiara has had no training in regards to racial harassment.  (DiChiara Depo. pp. 107:8-12). He has never done anything to inform his subordinates about racial harassment policies and procedures.  (DiChiara Depo. pp. 108:22 – 109:3).

### B.    NARRATIVE STATEMENT OF ADDITIONAL FACTS

Plaintiff also sets forth the following facts which may or may not be in dispute but are pertinent to Plaintiff's case and must be taken in the light most favorable to Plaintiff for purposes

of this motion:

### 1.     Plaintiff's Claims of Harassment, Discrimination and Retaliation

Betty Cliatt, a black co-worker, constantly told Plaintiff she was going to send her to the black school so she could learn to do things the black way. (Plaintiff's Exh. A; Elizabeth Hutchinson Depo. pp. 68:21 – 69:4; 73:1-10). Plaintiff reported this to Beverly Walker, her former supervisor. (Hutchinson Depo. pp. 73:11-13). Cliatt also told Plaintiff "white people are stupid." (Hutchinson Depo. pp. 73:3-13). Plaintiff reported this to both Walker and Densel, her supervisors.(Hutchinson Depo. pp. 73:3-13). Plaintiff explained to Densel when Densel became the new supervisor for 2004-2005 that she had problems with Cliatt and Densel told her that things were going to be different. (Hutchinson Depo. pp.75:9 - 76:3-11).

Plaintiff told Densel about race issues and that some of the employees didn't want to work as hard as the other employees or follow directions. (Hutchinson Depo. pp. 76:15 – 78:4). She told Densel how Cliatt liked to run her mouth and criticize white people and say that white people are nothing but trailer trash. (Hutchinson Depo. pp. 77: 17- 78:4). Over the course of her employment Cliatt made numerous complaints to Plaintiff including, but not limited to the following:

> (1) Cliatt said she was going to send me to the black school so I could learn to do things the black way; (2) "White people are so stupid"; (3) "White people can't cook"; (4) "White people don't know how to do anything"; (5) "White people are always putting the blame on black people because they are black"; (6) "It's the white people doing the crimes"; (7) "What people are sorry"; (8) "All white people are white trailer trash"; (9) "White people take things that don't belong to them"; (10) "Whites are nothing but trailer trash"; (11) "Ain't no white trailer trash going to be putting their face over my food"; (12) During the Michael Jackson trial Cliatt stated that it was all about some white trash trying to get Jackson's money; (13) White people are just ugly, the way they look as human beings; (14) Why is Brenda Densel sending her white trailer trash daughter to check on us, she has no authority over us; (15) Cliatt would criticize Brenda Densel saying things like "this white trailer trash don't know what she's doing"; (16) White trailer trash abuses black people; (17) It's

actually white people doing the crimes and blaming it on the black people; (18) White people are up to no good; (19) White trailer trash has to send her white trailer trash to check up on us.

(Plaintiff's Exh. W; Plaintiff's Responses to Defendant's Interrogatories #1).

Plaintiff explained to Densel that Cliatt was treated her this way because she was the only white employee.  (Hutchinson Depo. pp. 81:7-15)

Additionally, Cliatt made remarks to her such as "When you walk past me you say excuse me." However, she didn't do this to the black employees.  Cliatt did not want to, and on occasion, would refuse to share the sink or work area with her, however, she would share with the other black girls.  When Plaintiff was assigned to wash pans, Cliatt would not wash any of the pans that Plaintiff gave to her and would only wash pans if she received them from other girls. Cliatt often falsely accused Plaintiff of taking her food. Cliatt would go out of her way to interfere with Plaintiff doing her job and would try to make things harder on Plaintiff.  Cliatt did not treat black co-workers in a similar manner.  (Exh. W).

Plaintiff observed Cliatt providing meals to black school children who were over the $5.00 credit limit for unpaid food and denying meals to white children who were likewise over the limit. Plaintiff also observed Cliatt Betty handing certain food to the black children, but would not do the same for the white children.  (Exh. W).

Cliatt would deliberately make a mess on the floor when Plaintiff was assigned to mop. She would pour food juice out of the pots onto the floor, look at Plaintiff and then laugh and tell her that she had missed a spot. A few times when Cliatt was mopping and Plaintiff was washing pans, she came over to where she was working and took the wet mop and purposely swung it towards Plaintiff's feet and legs, soaking her pants and shoes. Cliatt then looked at Plaintiff and laughed.

(Exh. W).

On November 9, 2004, a co-worker at South Girard cut Plainitff's finger by snatching tongs from her hand. Plaintiff went to Densel's office to get a bandage. Densel took her to Passmore's office. Densel told Plaintiff: "Something needs to be done, I don't know how to handle the girls. I can't take any more of this. I've got to have some help with the way they have been doing. I've never had to deal with a situation like this. Its gone on long enough and now I've got a good reason to take you over to the office and get some help. I just don't know what to do, maybe Mrs. Passmore and Mr. Adams do." (Exh. W).

Later that day, Plaintiff and her husband went to talk with Passmore and Adams about the harassment she had been suffering. Plaintiff's husband taped the conversation. (Exh. I). The next day, November 10, 2004 when Plaintiff went back to work, Densel acted angry with her because they had gone to Passmore and Adams. From then on it seemed as if Densel was unwilling to help Plaintiff.[1]  (Exh. W).

After her complaints, the harassment of Plaintiff continued and in fact things got worse. Other substitute workers did not want to come back to work in the kitchen at South Girard. Then Densel went out on some kind of medical leave and began sending her daughter to the South Girard to check up on the CNP workers. Cliatt didn't like this. She would make statements described above about "White trailer trash has to send her white trailer trash to check up on us". (Exh. W).

The harassment continued up until Plaintiff was notified of her termination. The supervisors and managers knew what was going on and refused to put an end to the harassment. Instead of dealing with the problem, they decided to terminate her for complaining about the harassment.

---

[1]Of course, at this time, Densel and Passmore had already made the decision to non-renew Plaintiff.

On May 13, 2005, Adams came to the school and called Plaintiff to report to the office. When she got to the office, Adams and Joshua Laney, the Assistant Principal, were present and Adams told Plaintiff she would not have a job after this year with the school system. (Exh. W).

Plaintiff asked for a letter of recommendation from Paula Pritchett, but Densel told Pritchett no. Plaintiff wrote a letter to Dr. DiChiara asking for copies of her personnel file and her evaluations that were done by her manager, Densel, at South Girard in the cafeteria. Plaintiff did not receive her evaluation from Densel, but did receive her evaluation from Beverly Walker, her former manager. (Exh. W).

After the school year ended, Plaintiff went to DiChiara to complain about her termination and see what could be done. However, neither DiChiara or the Board would give Plaintiff her job back. (Exh. W).

        2.      <u>A Non-Renewal is Effectively a Termination.</u>

A non-renewal effectively acts as a termination of the employee. (Passmore Depo. pp. 22:1-17)(Plaintiff's Exh. N; Hutchinson Termination Letter). The decision to non-renew an employee can be made earlier in the school year, although it may not become effective until the end of the school year. (Passmore Depo. pp. 31: 23 – 32:7).

        3.      <u>Ms. Hutchinson was a Good Employee without Performance Problems.</u>

Hutchinson was a good employee who did her job without performance problems. (Passmore Depo. pp. 42:5-18)(Densel Depo. pp. 22:3-11)(Plaintiff's Exh. K; Hutchinson Performance Evaluation 2004)(Plaintiff's Exh. M; Hutchinson Performance Evaluation 2005).

        4.      <u>Ms. Hutchinson and her Husband made a Formal Complaint of Racial Discrimination and Harassment on November 9, 2004.</u>

During the November 10, 2004 meeting with Passmore and Adams, both Ms. Passmore and Ms. Adams acknowledge that Ms. Hutchinson was making a complaint of racial discrimination and racial harassment. (Exh.I). Passmore remembers discussing the possibility of Passmore transferring and acknowledged that it was unfair to Hutchinson, but the reality was she could not transfer all of the other co-workers . (Passmore Depo. pp. 59:18 - 60:23)(Exh. I). The internal complaints made by Ms. Hutchinson clearly qualify as a complaint. (DiChira Depo. pp. 74:3 – 75:2)(Exh. R; Board Complaint Procedures).

     5.    <u>All of the Actual Decision-Makers Had Knowledge of the Complaints of Racial Discrimination and Harassment.</u>

Passmore was aware that Hutchinson made a complaint that other employees didn't like her. (Passmore Depo. pp. 56:9 - 57:4). Passmore was aware that Hutchinson made a complaint about race. (Passmore Depo. pp. 58:10-12); 65:5 – 66:8)(90:5-10). Passmore remembers comments about "[w]hat are [they] going to do about [Hutchinson] being treated – the hostile treatment she was receiving." (Passmore Depo. pp. 63:10 – 64:8). Passmore took it to mean that "it was a lot of blacks" that were being "one-sided" toward Hutchinson. (Passmore Depo. pp. 64:9-20; 65:9-15).

Jeff Adams, the Personnel Director (now deceased), was also called into this meeting. (Passmore Depo. pp. 69:8-11). Passmore went to get Adams during the meeting and told him while they walked back that there were some allegations of racial activity. (Passmore Depo. pp. 96:8-20). Passmore and Adams were both present in the formal complaint meeting and Densel discussed the meeting with them. (Exh. I).

     6.    <u>The Next Day the Decision-Makers Decided to Terminate Plaintiff</u>

        a.    <u>Decision to Terminate Plaintiff</u>

The next morning Passmore went to talk to Densel and discussed the meeting from the day prior and discussed how Hutchinson was coming up for tenure. (Passmore Depo. pp. 79:14-20)(Densel Depo. pp. 8:20 - 9:1; 31:6 – 32:5; pp. 51:10-18).   Passmore informed Densel that Hutchinson and her husband had come by and made a complaint about some problems that were going on with other employees. (Densel Depo. pp. 31:18-23).   Densel  had never met Mr. McCart and based everything about her decision to non-renew Hutchinson on what was told to her by Ms. Passmore.  (Densel Depo. pp. 33:6-12).   Although Passmore acknowledges that regardless of the merits of an employee complaint, the complaint should be investigated, she did not investigate Hutchinson's complaint because the decision was made to non-renew her the next day.  (Passmore Depo. pp. 92:23 – 93:21; 96:21 -- 97:16).

Passmore and Densel then went to talk to Reginald Sparks, the Principal of South Girard, on November 10, 2004.  (Passmore Depo. pp. 82:6-12)(Densel Depo. pp. 34:3-12; 351-18).   They went to Sparks to make him aware of their decision.  (Passmore Depo. pp. 84:13-21).   According to Densel, this meeting was about the complaints Hutchinson and McCart had made the day before. (Densel Depo. pp. 38:8-12).

During this conversation, Densel told Sparks that "I'm going to recommend that Ms. Hutchinson be nonrenewed for the next school year."  Sparks and Ms. Passmore both agreed with Densel about the nonrenewal.  (Densel Depo. pp. 46:3-23).   During this meeting on November 10, 2004, the decision was made to non-renew Hutchinson's contract.  (Passmore Depo. pp. 52:8-12; 83:3-8)(Doc. #21).   Densel and Passmore knew from this date on that Hutchinson was going to be nonrenewed because the decision had already been made.  (Densel Depo. pp. 48:9 - 49:5).

            b.     <u>Mr. Sparks Has Given Inconsistent Testimony Regarding the</u>

<u>Decision to Non-Renew Plaintiff.</u>

Passmore testified she told Sparks about what took place in the meeting with Hutchinson and McCart.  However, according to Sparks, the meeting he had with Densel and Passmore was not about McCart, rather it was about how Hutchinson was not a team player and was having performance problems and problems working with the other employees.  Sparks, who was also a decision-maker or recommender in the chain of command, testified that when Passmore and Densel came to talk with him about non-renewing Ms. Hutchinson they did not discuss with him the meeting Hutchinson and McCart had with Passmore and Adams.  (Sparks Depo. pp. 23:4 - 25:2).  Sparks does not recall discussing McCart.  (Sparks Depo. pp. 31:1-3).

Sparks recalls that Passmore and Densel recommended the decision to non-renew Hutchinson because Hutchinson not being "flexible" or having the ability to work as a team.  (Sparks Depo. pp. 29:8: - 30:10). **Sparks testified that Passmore's recommendation was because of teamwork and poor performance problems, not because of McCart or any safety issues.** (Sparks Depo. pp. 29:8 - 31:3; 52:23 -- 53:9).

Sparks did not investigate anything about Ms. Hutchinson's employment.[2]  He did not interview or discuss the situation with Hutchinson or conduct any other independent investigation.  (Sparks Depo. pp. 43:22 - 45:2).  Any recommendation that Mr. Sparks made regarding Ms. Hutchinson's non-renewal was based on what Ms. Densel and Ms. Passmore told him. (Sparks Depo. pp. 47:12-16).

---

[2]If Sparks would have conducted his own independent investigation he may have discovered that Plaintiff had made an internal complaint of harassment and may have attempted to correct the situation prior to terminated her.  However, Sparks, like Dr. DiChiara and the Board, merely rubber-stamped the decision based on her "alleged performance problems", although Densel and Ms. Passmore both admit that Hutchinson was a good employee.

    c.    <u>Plaintiff was not informed of the decision until the end of the school year.</u>

Ms. Hutchinson was not informed she would be non-renewed until the end of the school year. (Plaintiff's Exh. N; Termination Letter 2005; Plaintiff's Exh. O; Hutchinson Non-Renewal 2005). She was informed in a meeting with Joshua Laney and Jeff Adams. Hutchinson asked why she was being terminated, but Adams would not give her a reason. (Josh Laney Depo. pp. 19:12 - 20:7).

    7.    <u>Defendant has given different, inconsistent and untrustworthy reasons for Plaintiff's termination.</u>[3]

    a.    One reason given for wanting to nonrenew Ms. Hutcinson was because of safety reasons regarding Mr. McCart based on what Ms. Passmore told Ms. Densel about the meeting.[4]  (Densel Depo. pp. 47:1-9).  Strangely, Densel agreed with Passmore despite the fact that she had never met Mr. McCart.  (Densel Depo.. Pp. 47:1-9).

    b.    After Plaintiff filed an EEOC Charge, the Defendants' stated another reason in the EEOC position statement:

> "Charging party was not terminated for poor work performance.  Instead, reasons for her termination were that she complained constantly to her supervisor, and when the supervisor attempted to have charging party and the alleged wrong-doer meet together with the supervisor, charging party always refused to do so."

(Plaintiff's Exh. U: EEOC Position Statement)(White Depo. pp. 37:20 – 38:9).  Defendant fails to

---

[3]A plaintiff survives summary judgment "simply by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate nondiscriminatory reasons." *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 965 (11th Cir. 1997).

[4]Plaintiff notes that Mr. McCart did nothing that could be construed as violent during any meeting. Passmore understood that McCart was upset because he wife got hurt that day.  (Passmore Depo. pp. 76:19-22). Ms. Densel had never met Mr. McCart, therefore based her knowledge on what Passmore told her about McCart. (Passmore Depo. pp. 83:15 -- 84:2).  And Densel made her decision on what Passmore told her.  (Passmore Depo. pp. 84:3-16).  Furthermore, when Mr. McCart and Ms. Hutchinson met with Dr. DiChiara to discuss the termination, Dr. DiChiara understood that Mr. McCart was upset about his wife being cut and stated that the meeting was "cordial."
(DiChiara Depo. pp. 64:19 – 65:3).

mention  Mr. McCart being potentially violent or a safety concern and clearly offers inconsistent testimony than Mr. Sparks, Ms. Densel and Ms. Passmore.

     c.  Reginald Sparks based his decision to terminate Plaintiff because of because of poor teamwork and poor performance problems, not because of Mr. McCart.  (Sparks Depo. pp.  29:8 - 31:3; 52:23 -- 53:9).

     8.  <u>Neither the Phenix City Board of Education nor Dr. Larry DiChiara Conducted any Internal Investigation regarding Plaintiff's Complaints.  Both parties Rubber-Stamped the decision of the real decision-makers.</u>

  The Board does not have a specific policy regarding race discrimination or racial harassment or a retaliation policy (White Depo. pp. 25:11 - 26:2).  The Board believes that the superintendent and other representatives under the superintendent should investigate all complaints that are made to them.  (White Depo. pp. 28:1-6).  Furthermore, the employees of the Board should look into all complaints, regardless of whether they believe the merits of the complaints.  (White Depo. pp. 28:15-23).  However, the Board did not conduct any independent investigation of Ms. Hutchinson's complaints.  (White Depo. pp. 24:9-12).

  No one from the Board came to talk to Sparks about the decision to non-renew Ms. Hutchinson.[5]  (Sparks Depo. pp. 42:16-18).  No one from the Board went to Passmore to discuss Hutchinson. (Passmore Depo. pp. 87:1-4).  Dr. Dichiara did not discuss Hutchinson with Passmore until after the decision had been made.  (Passmore Depo. pp. 87:11-13).  Although Paula Prittchett was the Assistant Manager of CNP at South Girard and worked closely with Hutchinson and was at the meeting when Passmore and Densel discussed Hutchinson and McCart's complaints, none of

---

[5]Of course, if the Board or DiChiara would have discussed the issues with Sparks they may have discovered the inconsistent reasons these decision-makers have given for Plaintiff's termination and may have conducted further investigation.

14

the decision-makers made any attempts to ask Pritchett anything about Hutchinson's employment. (Plaintiff's Exh. F; Paula Pritchett Depo. pp. 19:2 – 21:22; 29:1-16).

Dr. DiChiara never went to discuss Hutchinson with Sparks. (Sparks Depo. pp. 42:13-15). At the time of the non-renewal, DiChiara did nothing to find out why Hutchinson was being non-renewed. (DiChiara Depo. pp. 48:21 – 49:1). Effectively, DiChiara and the Board rubber-stamped the decision without any review of the facts.

Dr. DiChiara makes the final recommendations to the Board. (DiChiara Depo. pp. 25:6-21). Dr. DiChiara relied on the recommendation of the Personnel Director, who was Jeff Adams at the relevant time. (DiChiara Depo. pp. 25:22 -26:1). Dr. DiChiara's decision was based solely on Mr. Adams recommendation. (DiChiara Depo. pp. 49:5-10).

The Phenix City Board of Education relied on Dr. DiChiara's recommendation to nonrenew Ms. Hutchinson's contract. (Plaintiff's Exh. E; Lori White Depo. pp. 24:1-4). The Board is aware that neither Dr. Dichiara nor Mr. Adams undertook any independent investigations into Ms. Hutchinson's complaints. (White Depo. pp. 29:17 - 30:14).[6]

Hutchinson and McCart made another complaint to Dr. DiChiara after she was informed of her termination and after the board and Dr. DiChiara had made their final decision. When Dr. DiChiara met with Ms. Hutchinson and Mr. McCart, the conversation was "for the most part, it was cordial." (DiChiara Depo. pp. 64:19 – 65:3). When Dr. DiChiara spoke with Ms. Passmore, he acknowledged that there appeared to be some friction between Ms. Hutchinson and some of the other

---

[6]Although Dr. DiChiara may have talked to Ms. Passmore about the decision to terminate Ms. Hutchinson, he only did so after Ms. Hutchinson and Ms. McCart came to complain to him about her non-renewal. This was after the final decision had been made and after Dr. DiChiara made his recommendation to the Board. (DiChira Depo. pp. 60:5-14).

employees. (DiChiara Depo. pp. 53:6 - 54:21)(pp. 60:19 -- 61:7)("the safety issues, and the general

junk that was happening between the employees.") Sparks recalls sitting in on one meeting with Ms.

Hutchinson and other employees discussing working together. (Reginald Sparks Depo. pp. 19:15

– 20:3).

        9.    <u>General Concerns about Racial Issues at South Girard Middle School.</u>

Previously, there had been concerns about racial issues at South Girard, including the fact

that grade reconfiguration may lead to South Girard becoming a majority black school. (White

Depo. pp. 43:6 - 45:16). Furthermore, there are people who are concerned because the location of

South Girard is in a predominantly black neighborhood. (White Depo. pp. 45:17 - 46:7). The school

is in a ninety-eight percent black neighborhood. (DiChiara Depo. pp. 103:9-12). There had been

issues concerning race at South Girard that were public knowledge. (Plaintiff's Exh. S; Newspaper

Article; Re-segregation Fears)(Plaintiffs' Exh. T; Newspaper Article; South Girard Racial Issues).

## II.    <u>STANDARD OF REVIEW</u>

### A.    SUMMARY JUDGMENT STANDARD

The basic issue before the court on a motion for summary judgment is whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law. The moving party has the burden of showing the absence

of a genuine issue as to any material fact, and in deciding whether the movant has met this burden

the court must view the movant's evidence and all factual inferences arising from it in the light most

favorable to the nonmoving party. If reasonable minds could differ on the inferences arising form

undisputed facts, then a court should deny summary judgment.

"As the moving party, [the defendant] has the burden of showing the absence of a genuine

issue of material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir. 1993). The district court cannot weigh conflicting evidence or make credibility determinations; instead, "'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Hairston*, 9 F.3d at 919 (quoting *Anderson*, 477 U.S. at 255).

## III.  ARGUMENT

### A.  PLAINTIFF HAS MET HER PRIMA FACIE CASE OF RACE DISCRIMINATION IN VIOLATION OF TITLE VII, § 1981 AND THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

Plaintiff notes that Defendant does not substantively address the Plaintiffs claims for race discrimination other than addressing the legal aspects of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 , 98 S.Ct. 2018 (1978) and the hostile work environment claims. Plaintiff will address the legal analysis more fully below, but states that Plaintiff does not have to rebut the factual argument and her claims should survive summary judgment as Defendant does not address the factual elements of Plaintiff's race discrimination claims.[7]

Furthermore, Plaintiffs claims of race discrimination are substantially similar to the

---

[7]Federal Courts are consistent in requiring that parties opposing summary judgment shall be given a meaningful opportunity to rebut all grounds and all evidence advanced in support of a motion for summary judgment. *See Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir. 1989)(**"When a party moves for summary judgment on ground A, his opponent is not required to respond on ground B** -- a ground the movant might have presented but did not.")(emphasis added); *see also, John Deere Co. v. American National Bank*, 809 F.2d 1190 (5th Cir. 1987)(reversing granting of summary judgment on ground not advanced by moving party since non-moving party did not have opportunity to respond.)

retaliation claims and the equal protection claims which are also addressed more fully below and should be analyzed by taking into account the arguments of retaliation and pretext addressed below.

### 1.    TITLE VII AND § 1981[8]

As part of Plaintiff's prima facie case on her race discrimination claim, she must show that "[she] is a member of a protected class, that [she] was qualified for [her] position, that [she] was terminated and that [she] was replaced by someone outside [her] protected class."  See *Hawkins v. Ceco Coporation*, 883 F.2d 977, 982 (11th Cir. 1989). It is undisputed that Plaintiff has met a prima facie case of discrimination.  She is a white employee[9] who was qualified for her position (i.e. testimony indicates she was a good employee and received favorable performance evaluations), she was terminated and replaced by a black employee.

The initial burden is initially on the plaintiff to show a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Upon this showing, the burden of production shifts to the employer to articulate legitimate, nondiscriminatory reasons for the employment action taken.  *Burdine*, 450 U.S., at 258.  If the defendant satisfies this burden, the plaintiff must prove that the articulated reasons are a mere pretext for discrimination.  *McDonnell Douglas*, 411 U.S., at 804-805.

A plaintiff attempting to prove race discrimination  may do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing

---

[8]The analytical framework and proof requirements are the same for plaintiff's § 1981 and Title VII claims, so the court does not address them separately.  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998); *Howard v. BP Oil Co.*, 32 F.3d 520, 524 n. 2 (11th Cir. 1994).

[9]In reverse discrimination suits, plaintiffs must establish a *McDonnell Douglas* prima facie case. The test requires a reverse discrimination plaintiff to prove: (1) that she belongs to a class (2) that she was qualified for the job (3) that he was rejected for the job or terminated; and (4) that the job was filled by a minority group member or a woman.  *Wilson v. Bailey*, 934 F.2d 301, 302 (11th Cir. 1991).

that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256; *U.S. Postal Service v. Aikens*, 460 U.S. 711, 714-715 (1983); *Rosenfield v. Wellington Leisure Products, Inc.,* 827 F.2d 1493, 1495 (11th Cir. 1987).

The quantum of proof necessary to defeat a motion for summary judgment when the defendant presents a legitimate, non-discriminatory reason for its decision was discussed by the Eleventh Circuit in *Howard v. BP Oil Co.*, 32 F.3d 520, 525 (11th Cir. 1994). The Eleventh Circuit, interpreting *St. Mary's* stated:

> *St. Mary's* holds that proof that a defendant's articulated reasons are false is not proof of intentional discrimination; it is merely evidence of intentional discrimination. However, evidence of intentional discrimination is all a plaintiff-appellant needs to defeat a motion for summary judgment. That evidence must be sufficient to create a genuine factual issue with respect to the truthfulness of the defendant's proffered explanation.

*Howard*, 32 F.3d at 525. "Under *St. Mary's*, a plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Id.* at 526. See also *Combs v. Plantation Patterns*, 106 F.3d 1519, 1532 (11th Cir. 1997)("Once a plaintiff has established a prima facie case and has put on sufficient evidence to allow a factfinder to disbelieve an employer's proffered explanation for its actions, that alone is enough to preclude entry of judgment as a matter of law.")

### a.    Race Discrimination

Defendant spends a great deal of time arguing that Plaintiff cannot meet her prima facie case of hostile work environment. However, Plaintiff's claims are also based on race discrimination based on the fact that her race was a motivating factor in the decision to terminate her. Although Plaintiff is white, she may still maintain a claim for race discrimination.

As part of plaintiff's prima facie on his discriminatory termination claim, she must show that "[s]he is a member of a protected class, that [s]he was qualified for his position, that he was terminated and that he was replaced by someone outside his protected class." *See Hawkins v. Ceco Coporation*, 883 F.2d 977, 982 (11th Cir. 1989).

It is undisputed that Plaintiff was the only white employee working with all black co-workers during the 2004-2005 school year. (See Doc. #31, ¶ 10). Defendant also acknowledges that Plaintiff was a white employee working in a majority black school in a majority black neighborhood with all black co-workers. When Plaintiff raised specific complaints that race was a factor in the way she was being treated, the Defendant made the decision to terminate her. Defendant was required to investigate her complaints, yet failed to do so. Rather than address the issues Plaintiff raised, Defendant took the easy road and terminated Plaintiff. Clearly, because Defendants did not want to conduct an investigation and "stir the pot" with the black co-workers, Plaintiff was terminated because she was the only white employee and the employee who made complaints of racial problems. Plaintiff was replaced by a black female, Mary Carter. This evidence is sufficient to survive summary judgment on a race discrimination claim.

### b. Hostile Work Environment

It has been clearly established that whether a hostile environment exists is a question of fact to be determined upon consideration of the "totality of the circumstances." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 69, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986). In *Harris v. Forklift Systems, Inc.*, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993), the Supreme Court unanimously held that the factual issue to be decided in a hostile work environment claim is whether the environment, based on all facts and circumstances, was so discriminatory, abusive, or hostile that it altered the terms and

conditions of employment for those within the protected class.  *Harris*, 114 S. Ct. at 370.  *See*

*National Railroad Passenger Corporation v. Morgan*, 122 S.Ct. 2061, 2074 (2002)("A hostile

environment claim is comprised of a series of separate acts that collectively constitute one 'unlawful

employment practice.").

    In order to make out a *prima facie* case for a racially hostile work environment, Plaintiff must

show (1) that she belongs to a protected group; (2) that she has been subject to unwelcome

harassment; (3) that the harassment complained of was based on race; (4) that the harassment

complained of was sufficiently severe or pervasive to alter the terms and conditions of employment

and create a discriminatory abusive working environment; and (5) that the employer is responsible

for such environment under either a theory of vicarious or direct liability.  *Miller v. Kenworth of*

*Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (*citing Mendoza v. Borden, Inc.*, 195 F.3d

1238,1245 (11th Cir. 1999)).

    Plaintiff has sufficiently alleged numerous incidents of harassment against her by a black co-

worker that were clearly based on her race and clearly affected her work.  (See Section II(B) above).

This evidence shows that the conduct altered her working conditions and made it difficult for her to

do her job.  See *Harris*, 510 U.S. at 25 (Ginsberg, J., concurring)( "it suffices to prove that a

reasonable person subjected to the harassing conduct would find ... that the harassing conduct so

altered the working condition as to 'make it more difficult to do the job.'").

    Applying the Eleventh Circuit precedent to the facts of this case reveals that there is at least

a question of fact as to whether the environment created and ignored by Defendant was severe or

pervasive. *See generally the following cases where the Eleventh Circuit found hostile environment*

*claims actionable on a case by case basis by evaluating the totality of the circumstances: Hulsey v.*

*Pride Rest., LLC*, 367 F.3d 1238 (11ᵗʰ Cir. 2004); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269

(11ᵗʰ Cir. 2002); *Olson v. Lowe's Home Centers Inc.*, 130 Fed. Appx. 380 (11ᵗʰ Cir. 2005); *Johnson*

*v. Booker T. Washington Broadcasting Service, Inc.,* 234 F.3d 501 (11ᵗʰ Cir. 2000); and *Dees v.*

*Johnson Controls World Services, Inc.*, 168 F.3d 417 (11ᵗʰ Cir 1999); *Malone vs. K-Mart Corp.*, 51

F.Supp.2d. 1287 (M.D.Ala. 1999).

Plaintiff reported these incidents yet Defendant failed to investigate her complaints and

terminated her employment.  There is clearly a question of fact as to whether the harassment is

sufficiently severe or pervasive especially considering the fact that Defendants were made aware of

the conduct and terminated Plaintiff rather than addressing her concerns.  Plaintiff has clearly

established that the harassment she suffered was based on her race and that the harassment was so

severe and pervasive that it lasted over two years of her employment and that it altered her

employment until the point where she was terminated from that employment because of her

complaints.

**B.**      **PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM FOR RETALIATION**

**1.**      **Prima Facie Case**

To establish a *prima facie* case of retaliation, plaintiff must show that (1) she engaged in

statutorily protected expression; (2) she suffered an adverse employment action[10]; and (3) there is

some causal relation between the two events.  *EEOC v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571-

72 (11ᵗʰ Cir. 1993)[11].;  *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11ᵗʰ Cir. 1998).

---

[10]Defendant does not address whether Plaintiff suffered an adverse action, but it is undisputed that Plaintiff terminated from her position by being non-renewed, which is effective as a termination.

[11]The Eleventh Circuit "has recognized that §1981 includes a cause of action for retaliation...." *Tucker v. Talladega City Schools*, 171 Fed.Appx. 289 (11ᵗʰ Cir. 2006); *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1412-13 (11ᵗʰ Cir. 2001)(recognizing that §1981 retaliation claims are viable after the 1991 amendments to §1981).

Summary judgment is ordinarily inappropriate once a prima facie case of retaliation has been established. *Hairston*, 9 F.3d at 919-20.

### a.    Protected Expression

Plaintiff has clearly established that she engaged in protected expression. She made complaints about racial discrimination to her immediate supervisors, Densel and Walker, and she went up the chain of command to Passmore and Adams and made a formal complaint concerning racial discrimination and harassment. (See Exh. I). After she was finally told of her termination she went Dr. DiChiara to complain about these same issues. Each of these activities is a protected activity.

Plaintiff has met a prima facie case of retaliation because of the participation clause of Title VII's anti-retaliation provision and the opposition clause[12]. By making a complaint of racial discrimination Plaintiff was not only participating in a claim of discrimination she is also opposing the discrimination that was being taken against her. **"Statutorily protected expression includes internal complaints of [racial] harassment to superiors**, as well as complaints lodged with the EEOC..." *Pipkins v. City of Temple Terrace, Florida*, 26 F.3d 1197, 1201 (11th Cir. 2001)(emphasis added); *see also Rollins v. Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989)("the protection afforded by the statue [here, § 1981] is not limited to individuals who have filed formal

---

Furthermore, §1981 claims of employment discrimination are analyzed in the same manner as Title VII. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)(explicitly addressing a Title VII race discrimination claim with the understanding that the same analysis applied to both §1981 and Title VII).

[12] Under the opposition clause, a plaintiff engaged in "statutorily protected activity" when he protests an employer's conduct and demonstrates "a good faith, reasonable belief that the employer was engaged in unlawful employment practices. *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). Therefore, regardless of whether the employer's conduct is lawful or unlawful, an employee is protected when if she believes she is being discriminated against. *See Swanson v. Civil Air Patrol*, 37 F.Supp.2d 1312, 1325 (M.D. Ala. 1998).

complaints, but extends as well to those ... **who informally voice complaints to their superiors** or who use their employers' internal grievance procedures.")(emphasis added). Opposing an unlawful employment practice regarding discrimination constitutes engaging in statutorily protected expression. *See Clover v. Total Systems Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999).

"To recover for retaliation, the plaintiff need not prove the underlying claim of discrimination which led to [her] protest, so long as [she] had a reasonable good faith belief that the discrimination existed." *Meeks v. Computer Assoc. Intern.*, 15 F.3d 1013, 1021 (11th Cir. 1994); see *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 187-88, 125 S.Ct. 1497 (2005)( the Supreme Court recently stated that "no Court of Appeals requires a complainant to show more than [s]he had a reasonable, good-faith belief that discrimination occurred to prevail on a retaliation claim."). Therefore, retaliation does not have to be based on actual race discrimination, "because a retaliation claim may succeed where no [ race] discrimination ever took place." *Id*. at 187-88. Because the merits of Hutchinson's underlying claims are irrelevant to the retaliation claims, Plaintiff has sufficiently established a claim of retaliation. It is undisputed that Passmore, Densel and Adams were aware and acknowledge that Plaintiff was complaining about racial discrimination and racial issues; whether they believed the merits of this complaint is irrelevant to the retaliation analysis.

**b.    Casual Connection**

To meet the casual link requirement the plaintiff "merely has to prove that the protected activity and the negative employment action are not completely unrelated." *E.E.O.C. v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993). The evidence produced by Plaintiff to meet her prima facie case also establishes that Defendant's legitimate reasons for termination were merely pretext for the real reasons, which were race discrimination and retaliation.    Courts

24

"interpret the casual link requirement broadly; a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Meeks v. Computer Assoc. Intern.*, 15 F.3d 1013 (11th Cir. 1994)(citing *Reichhold Chem., Inc.*, 988 F.2d at 1571-72)(other citations omitted).

When a plaintiff makes an internal complaint of discrimination and is terminated within a short time frame of the complaint, such close temporal proximity is sufficient to survive summary judgment. *Brungart v. BellSouth,* 231 F.3d 791, 799 (11th Cir. 2000)(*citing Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)("close temporal proximity between an employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a general issue of material fact of a casual connection.") These complaints as described are clearly protected activity. *See Holifield*, 115 F.3d at 1566 (voicing concern about racial discrimination to superiors is protected activity under Title VII); *Pipkins, supra; Rollins, supra.*

Clearly, a reasonable trier of fact could conclude from this evidence that plaintiff was terminated, not for the reasons given by Defendant, but for the complaint of discrimination. *See Swanson v. Civil Air Patrol*, 37 F.Supp.2d 1312, 1336 ([M.D. Ala] 1998)(when Plaintiff was terminated within a short time frame of making an internal complaint by the decision maker he complained to, the evidence is sufficient to survive summary judgment).

As stated, Plaintiff was effectively terminated the day after she made a complaint of discrimination. Although she was not actually dismissed until the end of year, it is clear the decision was made the day after and the supervisory decision-makers merely rubber-stamped this decision. The fact that Densel, Passmore and Adams were aware of the protected activity and made their decision to terminated Plaintiff the next day is sufficient to survive summary judgment on Plaintiff's

25

claims.[13]  This evidence alone should is sufficeint to establish the casual connection element. *See*

*Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1322, 1446 (11th Cir. 1999)("[The Eleventh Circuit]

has plainly held that a plaintiff satisfies this element if he provides sufficient evidence that the

decision-maker became aware of the protected conduct, and that there was close temporal proximity

between the awareness and the adverse employment action."); *see also Holifield*, 115 F.3d at 1567

(evidence that decision-maker was aware of the protected activity at the time of the adverse job

actions was sufficient to establish that "the protected activity and the negative employment action

are not completely unrelated."); *Swanson*, 37 F.Supp.2d at 1336 ([M.D. Ala] 1998)(order denying

reconsideration)("[T]he timing, coupled with **the fact that [plaintiff's] protected activity was an**

**internal grievance complaining of unlawful harassment, against [him], by the very person who**

**fired [him]**, was enough to show a material question of fact as to whether [the employer's] proffered

non-discriminatory reason was pretext for retaliation.")(emphasis added).

Although Defendant may argue that Dr. DiChiara and the Board did not have knowledge of

these complaints at the time of the non-renewal, these parties are liable under the cats-paw theory

because it is undisputed that they "rubber-stamped" this decision without conducting any internal

investigation. (See Argument below).  Because Densel, Passmore and Adams were the actual

decision-makers, their knowledge of the harassment complaints is what effectively led to Plaintiff's

termination.  When a decision-maker uses impermissible bias (discriminatory bias and retaliation),

the bias can be imputed to the upper level Defendants who follow recommendations that were based

on the impermissible bias.  *Dickson v. LabCorp*, 396 F.Supp.2d 1298, 1304 (M.D. Ala. 2005)(J.

---

[13]Of course, Adams also played a major role in the decision and was present at Hutchinson's formal complaint meeting.  However, because Mr. Adams is now deceased, Plaintiff does not have testimony on the basis for his recommendation.

Thompson)(although upper level supervisor made ultimate decision to terminate Plaintiff, his decision was based entirely upon information conveyed to him by lower level supervisors; furthermore, it is relevant to look at what the lower level supervisors did not report to upper management); see also *Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1324 (11th Cir. 1998)(depending on the factual circumstances persons other than the final decisionmaker may be important in determining who made actual decision in employment discrimination cases); *Herawi v. Ala. Dep't of Forensic Sciences*, 311 F.Supp.2d 1335, 1348 n. 24 (N.D. Ala. 2004)(racial bias of subordinate supervisor is relevant in determining what decision-maker based his decision on; furthermore, biased supervisor who may not have had authority to terminate can make a company liable if that supervisor had direct input into the decision to terminate); *Sommers v. Pediatric Serv. Of American, Inc.*, 2006 WL 263599 (M.D. Fla., Feb. 1, 2006)(a dispute among Defendant's own witness as to who made ultimate decision and who had authority to terminate Plaintiff creates a genuine issue of material fact to preclude summary judgment); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)(a decision-maker's role can be established by circumstantial evidence; see also cats-paw theory discussed below); *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328 (11th Cir. 1999)(when biased recommender[s] of an adverse employment action and actual decision-maker are not the same person, plaintiff must show that discriminatory animus [retaliation for complaint] not [performance issues or safety concerns] were the reason for the termination).

      The evidence in the record clearly indicates and there is no doubt that Densel, Passmore and Adams made the **actual** decision to terminate/non-renew Plaintiff and whether the Board acknowledges that they had actual authority is irrelevant and clearly a disputed fact. These supervisors made their decision on impermissible bias after Plaintiff made her complaint. They gave

27

substantial input to upper-level supervisors who had authority to make the decisions. What they told these supervisors is clearly in dispute and in fact, they may have told the supervisors different things or withheld information about the formal complaint of harassment. Therefore, the ultimate decision-makers based their decisions on impermissible bias and can be held liable for this.

## 2.    PRETEXT[14]

"In order to establish pretext, the plaintiff is not required to introduce evidence beyond that already offered to establish the prima face case." *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 921 (11th Cir.1993). "Accordingly, the grant of summary judgment, though appropriate when evidence of discriminatory intent is totally lacking, is generally unsuitable in Title VII [or §1981] cases in which the plaintiff has established a prima facie case because of the 'elusive factual question' of intentional discrimination." *Hairston*, 9 F.3d at 921 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). A plaintiff may show pretext using comparative evidence, statistical evidence or direct evidence of retaliation. *Miles v. M.N.C. Corp.,* 750 F.2d 867 (11th Cir. 1985). Here, Hutchinson can point to a great deal of evidence from which a reasonable factfinder could infer a retaliatory motive from defendants' actions, along with specific examples of weaknesses and inconsistencies in defendants' proffered reasons.

In order to establish pretext, plaintiff is allowed to produce evidence "sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th

---

[14]Again, Plaintiff states that the evidence of Pretext applies to the race discrimination and retaliation claims under Title VII, § 1981 (through § 1983) and the Equal Protection claims.

Cir. 1997).  Pretext is established if a plaintiff can "demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  *Combs*, 106 F.3d at 1538;  see also *Hamilton v. Montgomery County Bd. of Educ.*, 122 F.Supp. 1273, 1281 (M.D. Ala. 2000)(citations omitted)("The trier of fact may infer the ultimate fact of discrimination from the falsity of the employer's explanation.").  If an "explanation is unworthy of credence" it is akin to "affirmative evidence of guilt." *Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 147 (2000). Indeed, "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision."  *Id*.

A "[Title VII or §1981] plaintiff may defeat a motion for summary judgment by undermining the credibility of a defendant's explanation's for its actions."  *Arrington v. Cobb County*, 139 F.3d 865, 875 (11th Cir. 1998).  The Eleventh Circuit is clear that evidence of an employer who is "shifting explanations for its actions" is sufficient evidence of pretext.  *Bechtel Constr. Co. v. Secretary of Labor*, 50 F.3d 926 (11th Cir. 1995); *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194 (11th Cir. 2004)(inconsistency in articulating the reasons for an action is evidence of pretext).

a.      **Defendants have stated different, inconsistent and untrustworthy reasons for Plaintiffs termination.**

Plaintiffs have established that Defendants have given inconsistent reasons for her termination.  Densel have stated that Plaintiff was terminated because of safety concerns regarding Hutchinson's husband, Mr. Will McCart, although they cannot state that anything McCart did was

violent and Passmore understood that he was upset because his wife had been cut on her hand.

Passmore and Densel testified that they brought their concerns to Sparks on the same day they decided to terminate (non-renew) Plaintiff.  At this point, the Defendants story takes on inconsistencies and becomes untrustworthy.  While Densel and Passmore state they went to discuss Mr. McCart and how he was a potential safety issue (even though he was not employed by the Board), Mr. Sparks only remembers discussing alleged "performance problems" and "teamwork" problems that Hutchinson had.  This is despite the fact that Densel and Passmore, her immediate supervisors, testify that Hutchinson was a good worker and did not have performance problems. Sparks testified that he based his recommendation to terminate Hutchinson because of alleged (but clearly untrue) poor performance and teamwork issues.

The inconsistency continued when Plaintiff filed an EEOC charge.  Defendant stated that Plaintiff was not terminated for poor work performance, but because "she complained constantly to her supervisor, and when the supervisor attempted to have [Plaintiff] and the wrong-doer meet together with the supervisor, [Plaintiff] refused to do so."  An employers inconsistent statements or inconsistent reasons for terminating Plaintiff is substantial evidence of discrimination and/or pretext and should be sufficient to survive a summary judgment motion.  *See Tidwell v. Carter Prods.,* 135 F.3d 1422, 1428 (11th Cir. 1998); *see also Stallworth v. E-Z Serve Convenience Stores*, 2001 WL 125304, No. 99-D-1503-N (M.D. Ala. Feb. 12, 2001)(De Ment, J.)(when an employer offers conflicting reasons for an employment action, such inconsistent reasons can establish pretext).

Plaintiff has sufficiently established that the Defendant's reasons contain "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [it's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs,*

*supra* at 1538; *Hamilton, supra* at 1281. Such inconsistencies and untrustworthiness clearly indicate that Plaintiff has established a question of fact as to the true reason for her termination and therefore summary judgment must be denied.

> **b.    Plaintiff was never disciplined for any of problems at work.**

Because Mr. Sparks has testified that he recommended termination based on poor performance, Plaintiff's performance is brought into issue.  When an employer fails to give any written discipline to the plaintiff prior to his termination yet claims "poor performance" was the reason for termination, the employer's legitimate reason can be considered pretext.  *See Clemmons v. Domino's Pizza, Inc.*, 73 F.E.P., 1743 (M.D. Fla.), *aff'd* 132 F.3d 1459 (11th Cir. 1997).  Plaintiff was never given any discipline or told anything about work performance.  Densel and Passmore, the Plaintiff's immediate supervisors, were clear that she was a good employee without any performance problems.  Plaintiff's performance evaluations also establish that she was a good employee.

Yet when Plaintiff asked the reason for her termination she was not given a reason.  She was jot told that her contract was being non-renewed.  These reasons indicate that Defendants wanted Plaintiff terminated because of her race and in retaliation for his complaints.  *See Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 56 (1st Cir. 2000)(fact that employer did not tell employee the reason for his termination helps support plaintiff's pretext argument).

> **c.    Plaintiff has Produced Evidence that Similarly-Situated Employees were treated more favorably than her.**

A plaintiff alleging discrimination may establish a prima face case and show pretext by showing that "his employer treated similarly situated employees outside of his classification more favorably...."  *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997; *see also Maynard v. Board of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003); *see also Billingsly v. Jefferson County*, 953 F.2d 1351

(11th Cir. 1992)(pretext shown where black employees were fired for excessive absences while white employees were only suspended three days). Here, the complaints Plaintiff made were directly related to how the black employees were being treated better and how it was unfair that black employees, specifically Betty Cliatt, were not going to be punished for the way they treated her. When the Defendants discussed transferring Plaintiff, Plaintiff indicated that it was not fair to transfer her when it was the other employees who were causing the problems. (See Exh. I). Plaintiff was the only white employee working among black co-workers in a predominantly black school in a predominantly black neighborhood, Defendant terminated Plaintiff for her complaints rather than investigate and address the concerns. Clearly, Defendant showed favoritism to the black co-workers by not addressing Plaintiff's concerns.

### 3. By failing to properly investigate Plaintiff's complaints, Defendants' Dr. DiChiara and the Phenix City Board of Education merely rubber-stamped the discriminatory decision of Densel, Passmore and Adams.

Plaintiff contends that the Phenix City Board of Education and Dr. DiChiara merely put a "rubber stamp" on the recommendations of Densel, Passmore and Adams who decided to terminate Plaintiff because she was the only white employee working in a predominantly black school in a predominantly black neighborhood.[15] When Plaintiff brought these issues of harassment and discrimination to their attention by making a complaint, the actual decision-makers decided to terminate her without conducting any internal investigation as they were required to do[16].

---

[15]The actual chain of command also went through Mr. Sparks; however because Passmore and Densel made the actual decision and because Sparks followed their recommendation, albeit for different reasons, Plaintiff basis this information on Passmore and Densel's testimony. Of course, Adams also played a major role in the decision and was present at Hutchinson's formal complaint meeting; however Mr. Adams is now deceased.

[16] Dr. DiChiara testified that it was an established policy for supervisors to conduct investigations into complaints of discrimination once those complaints are brought to the attention of a supervisor. Here, Mr. Adams and Ms. Passmore terminated Plaintiff without conducting their own investigation and prior to ever allowing anyone

By following the decision-makers retaliatory and discriminatory conduct, the Board and Dr. DiChiara can be held liable for its discriminatory and retaliatory conduct. *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999)(recognizing that "one way of proving that the discriminatory animus behind the recommendation caused the discharge is under the 'cat's paw' theory. This theory provides that causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee.").  "A supervisory employee [Dr. DiChiara and the Board] may be held liable for decisions ultimately rendered by her supervisor, if the plaintiff shows that the intermediary used the decisionmaker as a 'cats paw.'" *Hamilton v. Montgomery County Bd. of Educ.*, 122 F.Supp.2d 1273, 1287 (M.D. Ala. 2000)(If a jury concludes that the intermediary acted out of impermissible bias, and that the supervisor approved the intermediary's recommendation without giving adequate independent consideration, the jury could find a sufficient casual connection to establish discrimination);

In cases wherein a Court has dismissed a supervisory authority who takes part in the decision-making, but may not actually acted upon a discriminatory animus, Courts will allow the supervisory authority to be dismissed from the claim **only if** that supervisory party conducted their own independent investigation **before** making its decision.[17]  See *Stimpson*, 186 F.3d at 1332, where the

---

to investigate her complaints. "The bending of established rules may, of course be suggestive of discrimination." *Walker v. Prudential Property and Cas. Ins. Co.,* 286 F.3d 1270, 1279 (11th Cir. 2002); *Thomas v. Dade County Public Health Trust*, 177 F.Supp.2d 1283, 1292 (S.D.Fla.2001) ("The inconsistent application of an employer's policies can be circumstantial evidence of discrimination ."); *Sheppard v. Sears, Roebuck & Co.*, 391 F.Supp.2d 1168, 1181 (S.D. Fla. 2005)("One of the indirect ways a plaintiff may show pretext is by providing evidence of deviation from company policy as circumstantial evidence of discrimination, especially where the rules were bent or broken to give a non-minority applicant an advantage").

[17]Although Dr. DiChiara may have made a cursory investigation by asking a few questions, he only did so after Plaintiff and her husband made another complaint directly to him.  He had already made his decision to non-renew Plaintiff without conducting an independent investigation or ordering a subordinate to conduct an

Eleventh Circuit held that "the causal link between any discriminatory animus the City might have had and her termination was broken *by the Board's hearing and its independent decision to terminate her*."; *Tucker v. Talladega City Schools*, 171 Fed.Appx. 289 (11th Cir. 2006)(discussing *Stimpson*)(emphasis added). The Court of Appeals in *Stimpson* noted that the Civil Service Board's decision to terminate the Plaintiff was a "independent decision" only arrived at **after** "it conducted a three day hearing to investigate the charges, and during the hearing plaintiff was represented by legal counsel and was allowed to put on defense evidence and witnesses." *Stimpson*, 186 F.3d at 1332.

Essentially, where the individual accused of retaliatory animus is "an integral part" of a multi-level personnel decision, their improper motivation may "taint the entire ... process." *Schoenfield v. Babbitt,* 168 F.3d 1257, 1268 (11th Cir. 1999). "[C]ausation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating" the intermediate employee's actions. *Stimpson*, 186 F.3d at 1332; see also *Tucker v. Talladega City Schools*, 171 Fed.Appx. 289, 297 (11th Cir. 2006); *Tucker v. Housing Authority of the Birmingham District,* 2007 WL 1034761 (11th Cir., April 5, 2007)("We have recognized the cats paw theory may be utilized by the plaintiff" to prove that the discriminatory animus ultimately caused the discrimination if there is no independent investigation).

Specifically, when the harasser or person deciding to retaliate/discriminate (i.e., Densel, Passmore and Adams) makes a recommendation, but is not necessarily the final decision-maker, the employer who rubber-stamps or approves of the decision without conducting an independent investigation (i.e., the Board and Dr. DiChiara) can be liable for the decision to discriminate. See

investigation.

34

*Llampallas v. Mini-Circuits, Inc.*, 163 F.3d 1236,1249 (11th Cir. 1998)(citing *Shager v. Upjohn Co.,* 913 F.2d 398, 405 (7th Cir. 1990); *Long v. Eastfield College*, 88 F.3d 300, 307 (5th Cir. 1996)("if ...[the decision-maker] did not conduct his own independent investigation, and instead merely 'rubber-stamped' the recommendations of [those who had the discriminatory animus], the casual link between [the plaintiff's protected activities and their subsequent termination would remain intact."). "In a cat's paw situation, the harasser clearly caused the tangible employment action, regardless of which individual actually signs the employee's walking papers." *Llampallas*, 163 F.3d at 1249 (citing *Shager*, 913 F.2d at 405)(stating that in such a situation "[t]he [decisionmaker] would not more be a nonconductor [for discriminatory animus] ... than would be the secretary who typed [the plaintiff's] discharge papers knowing nothing of the discrimination that lay behind the discharge"). "In effect the harasser is the decisionmaker, and the titular 'decisionmaker' is a mere conduit for the harasser's discriminatory animus." *Id*.

This case differs markedly from *Stimpson* in that the Board and Dr. DiChiara's decision to terminated Plaintiff was not done after an independent investigation. Plaintiff has produced evidence that neither the Board nor Dr. DiChiara took any independent action or investigation regarding Plaintiff's termination and the reasons for her termination. Evidence in the record, in fact, establishes just the contrary. Densel and Passmore (and Adams) clearly had knowledge of Plaintiff's complaint of harassment and discrimination. Passmore acknowledges when Plaintiff made a formal complaint to her and Mr. Adams that "she has mentioned it" [referring to racial hostility in the workplace]. Mr. Adams acknowledged durng the formal complaint meeting that "I understand there is some racial hostility". Despite Plaintiff's demand to file a written, formal complaint, Mr. Adams advised her to get an attorney. No one involved conducted any independent investigation into

whether Ms. Hutchinson's complaints were valid.  Rather, they made a decision to terminate her employment the next day and the Board and Dr. DiChiara followed through with that recommendation at the end of the school year.

     **C.**    **<u>Defendants are liable for claims under the Fourteenth Amendment, by and through 42 U.S.C. § 1983.</u>**

     **1.**    **Plaintiff has stated Violations of the Equal Protection Clause of the Fourteenth Amendment.**

A school board's policy of extending preferential treatment to some employees because of their race can violates the Equal Protection Clause of the Fourteenth Amendment.  *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267 (1986).  "Racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination."  *University of California Regents v. Bakke*, 438 U.S. 265 (1978).  Furthermore, courts may analyze § 1983 Equal Protection claims using the same framework under Title VII or § 1981.  See *Richardson v. Leeds Police Dept.*, 71 F.3d 801, 805 (11th Cir. 1995)(in cases where § 1983 is employment as a remedy for the same conduct remedied by Title VII, the elements of the two causes of action are the same); *Portera v. State of Alabama Dept., of Finance*, 322 F.Supp.2d 1285, 1294 (M.D. Ala. 2003)(to the extent [Plaintiff's] equal-protection claims are identical to the Title VII claims, those claims should be analyzed together).

Here, by failing to investigate Plaintiff's complaints of racial discrimination, Defendant showed favoritism to the black employees by terminating Plaintiff, a white employee, and allowing the black employees to remain employment without conducting any investigation into the merits of the complaint.

     **2.**    **Defendant Phenix City Board of Education and Defendant DiChiara violated the policy of investigating complaints of**

**discrimination by failing to properly investigate the complaints made by Hutchinson, establishing that the failure to investigate was the true policy of the Board and DiChiara.**

Plaintiff is pursuing § 1981 retaliation claims through the remedial provisions of §1983, as provided for under this Circuit's precedent, against defendant Swindle in his individual capacity.[18] *Butts v. County of Volusia,* 222 F.3d 891, 893 (11th Cir. 2000)(Recognizing that where a plaintiff seeks vindication of rights secured by § 1981 against a state actor, §1983 provides the exclusive remedy for obtaining relief.); *Tucker v. Talladega City Schools*, 2006 WL 688967, *1)(recognizing that "any such claim must be brought under the remedial provisions of §1983"). Therefore, defendant's arguments with regard to the dismissal of plaintiff's §1981 claim is misplaced, as recognized in *Collier v. The Clayton County Community Service*, 236 F.Supp.2d 1345 (N.D. Ga. 2002), when a plaintiff brings a § 1981 claim through § 1983, it simply "merges" into the §1983 claim. *Collier v. The Clayton County Community Service*, 236 F.Supp.2d 1345, 1369 (N.D. Ga. 2002).

"*Monell* states that "when execution of a government's policy ... inflicts the injury ... [then] the government as an entity is responsible under § 1983." *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1290 (11th Cir. 2004)(citing *Monell* at 694). Furthermore, "[a] municipal governing body may be held liable for acts or policies of individuals to whom it delegated final decisionmaking authority in a particular area." *Harland*, 370 F.3d at 1291 (citing *Matthews v. Columbia Cty.*, 294 F.3d 1294, 1297 (11th Cir. 2002)).

---

[18]Plaintiff's § 1981, through §1983 claim against defendant DiChiara in his official capacity as Superintendent of the Board of Education is being through her claims against the Phenix City Board of Education. *Kentucky v. Graham*, 477 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985)("Official capacity suits ... 'represent only another way of pleading an action against an entity of which an officer is an agent.'")(citing *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 n.55, 98 S.Ct. 2018, 2035, n.55 (1978)).

Plaintiff is not basing her claims of retaliation against the Board and Dr. DiChiara on *respondeat superior*, but is basing it on direct liability because the Board had policy-making authority with which to decide whether to terminate Plaintiff and DiChiara was the decision-maker. See *Tucker v. Talladega City Schools*, 171 Fed.Appx. 289, 297-98 (11th Cir. 2006)(holding that allegations that School Board had final decision-making authority and that was sufficient to satisfy *Monell* and that Plaintiff did not have to demonstrate that the Board had "an official policy ... of retaliating against employees who exercise protected speech." ). It is clear that the City and the Board can be liable for the retaliatory conduct taken against Hutchinson, even if the retaliation claim is based on a § 1981 through the provisions of §1983. See *Tucker*, 171 Fed.Appx. at 298-300 (holding that Plaintiff presented sufficient evidence to survive summary judgment and that the Board could be liable for retaliation despite allegations of qualified immunity).

Defendants' argue that because the Board has no official policy permitting retaliation against persons who complain about discrimination they cannot be held liable under *Monell*. However, Plaintiff is confused why Defendant contends not having a policy is helpful. If Defendants had a policy prohibiting race discrimination and retaliation, which they do not, they may have been able to follow that policy and correct the situation. However, by failing to have an effective race discrimination and retaliation policy, Defendant is attempting to shield itself from the law by ignoring the law and disregarding Federal and Constitutional law. Finally, as established by Plaintiff, although not in writing, the actual policy of the Board was to terminate an employee who brings concerns of race discrimination to her supervisors.

The right to be free from retaliation in the employment context has been clearly established for some time in this Circuit. Specifically, the Eleventh Circuit has concluded that, **"[t]he right to**

**be free from retaliation is clearly established** as a first amendment right **and as a statutory right under Title VII....**" *Ratliff v. DeKalb County, Ga.*, 62 F.3d 338, 340 (11th Cir. 1995)(emphasis added)(also holding that there is no clearly established right under the equal protection clause to be free from retaliation); see also *Clark v. Alabama,* 141 Fed.Appx. 777, 789 (11th Cir. 2005)(same); see also *Leslie v. Ingram*, 786 F.2d 1533, 1537 (11th Cir. 1986)("An intentional and wrongful retaliation for the assertion of a constitutionally protected right is a substantive civil rights violation which may be prosecuted in a federal court pursuant to 42 U.S.C. § 1983..."), abrogated on other grounds by *Graham v. Connor*, 490 U.S. 386 (1990).

Furthermore, there can be no dispute that the equal-protection right to be free from purposeful, race-based employment discrimination was clearly established at the time of the event in question. *Burns v. Gadsden State Community College*, 908 F.2d 1512, 1517, 1518 (11th Cir. 1990)(per curiam); see also *Smith v. Lomax*, 45 F.3d 402, 407 (11th Cir. 1995); *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1064 (11th Cir. 1992) *Busby v. City of Orlando*, 931 F.2d 764, 775-76 (11th Cir. 1991); *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478-79 (11th Cir. 1991). "The cases [which are clearly established] cover a wide range of employment decisions, including discharge... and make it clear that intentional race discrimination is prohibited in the workplace. This has been a long-established rule of which employers should well be aware." See *Portera*, 322 F.Supp.2d at 1297.

When a Defendant retaliates against an employee who has made complaints of discrimination, the Defendant has violated clearly established laws that have been in effect for many years and have been established by Congress, to argue otherwise is against the express Congressional statutes and Eleventh Circuit law. Defendants DiChiara and the Board can be liable as the final

decision-makers who followed the discriminatory animus of the actual decision-makers by rubber stamping the decision without conducting an independent investigation.

**D.    Although Hutchinson was a Probationary Employee, Defendants have no right to violate Federal and Constitutional Law.**

"The purpose of the Fair Dismissal Act ... is 'to provide nonteacher employees a fair and swift resolution of proposed employment terminations.'" *Ex parte Athens State College*, 795 So.2d 709, 714 (11th Cir. 2000)(quoting *Bolton v. Board of School Comm'rs of Mobile County*, 514 So.2d 820, 824 (Ala. 1987).  Here, the Defendants did not provide Plaintiff with a fair and swift dismissal, rather they decided to terminate her the day after her complaint (November 10, 2004), but did not notify her until the end of the school year (May 2005).

This case is clearly distinguishable from *Guyse v. Morgan County Board of Education*, 516 So.2d 692 (Ala.Civ.App.1987) and *Ray v. Decatur City Board of Education*, 723 So.2d 680 (Ala.Civ.App. 1998), cited by Defendants, because here, Hutchinson is claiming violations of federal law and that her dismissal was because of her race and her complaints of discrimination.  Regardless, Plaintiff was not required to contest the procedure for her non-renewal because she is alleging violations of federal law and constitutional violations.

## CONCLUSION

Based upon the foregoing, it is clear that the Defendants' Motion for Summary Judgment should be denied.  There are numerous factual issues involved which should be determined by a jury, therefore, any grant of summary judgment would be in error.

Respectfully submitted,

s/ Joshua D. Wilson

40

Rocco Calamusa, Jr.
Joshua D. Wilson

*Attorneys for the Plaintiff*

**<u>OF COUNSEL</u>**
WIGGINS, CHILDS, QUINN & PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500

## <u>CERTIFICATE OF SERVICE</u>

       I do hereby certify that on this the  28th  day of   June  , 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Sidney S. Smith
Smith & Smith, PC
1503 Broad Street
Phenix City, AL 36867


                                   /s/ Joshua D. Wilson
                                   OF COUNSEL