IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDE DISTRICT OF ALABAMA
EASTERN DIVISION (OPELIKA)


ELIZABETH LYNNE HUTCHINSON        )
                                  )
        Plaintiff,                  )
                                  )
vs.                                  )         CIVIL ACTION NO.
                                          3:06-cv-00700-WHA
THE PHENIX CITY BOARD OF         )
EDUCATION and LARRY E. DiCHIARA    )
                                  )
        Defendants             )


<u>DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT</u>

Come now the Defendants, Phenix City Board of Education and Larry E. DiChiara, by
and through their attorney, Sydney S. Smith, and file their Reply to Plaintiff's Response to
Defendants' Motion for Summary Judgment.

Defendants' respond to several assumptions and conclusions made by Plaintiff in her
Response to Defendants' Motion for Summary Judgment as follows.

I.

The Defendants' object to the Plaintiff's characterization of the meeting of November 9,
2004 as a "formal complaint." A complete (as possible) transcript of that meeting has been
attached to Plaintiff's Response as Exhibit I. Mr. McCart, the Plaintiff's husband, (hereinafter
referred to as McCart) is speaking the majority of the time. On p. 3, lines 8-11; p. 4, lines 7-9 and
on p.15, lines 1-4, McCart states that "she", meaning his wife, wants to file a formal complaint.
Mr. Adams, Assistant Superintendent for Personnel, now deceased, (hereinafter referred to as
Adams) responds to Plaintiff by stating "So I would suggest that you do - - Write a formal
outline of your concerns, and you need to be specific. I think you've indicated that you felt that
you were being mistreated by some of the other employees; is that right? P.15, lines 16-21.
Hutchinson responds, "Uh-huh." P. 14, line 22.

Adams then states:

> You need to give specific examples of that and detail it and you then you need to
> write it to me or Penny. We will then go in and through the process that we
> follow.
> In these situations, there are procedures in place for that. So we can do that then at

1

the end of this, we'll you know, we'll get some options. You know, hostile
environment, you need specifics, okay?
Because you know, there are environments that I've been in that I didn't like, but
you know, I assume from what Penny told e a little bit, you've indicated there is
some racial hostility? p. 15, line23; p. 16, lines1-15.

To these comments by Adams, Hutchinson responds: "That's what I feel like."
        As Defendants' state in their Motion for Summary Judgment, Plaintiff Hutchinson never
filed the formal complaint and has not denied that fact.  While the initial decision to non-renew
Plaintiff was made the following day, November 10, 2004, because of other factors discussed
below, Plaintiff was not aware of that decision and did not become aware of her non-renewal
until May 2005.  Plaintiff had approximately 7 months in which to file her "formal complaint",
and she failed to do so.

        Brenda Densel, the Cafeteria Manager, (hereinafter referred to as Densel), made the
decision to non-renew Plaintiff on November 10, 2004 following a meeting with Penny
Passmore , CNP Supervisor, (hereinafter referred to as Passmore). Passmore came to the South
Girard Cafeteria and recounted the events of the meeting the prior night. Densel was concerned
about safety issues based on Passmore's representation of McCart's statements. Densel
Deposition, p. 51, lines3-18. Passmore had felt that McCart was angry and upset and that the
tone of his comments and the comments themselves were threatening. Passmore Deposition, p.
98, lines 17-19 and 23; p. 99, line 1; p. 101, lines 7-12.

        The following excerpts are McCart's statements during the November 9, 2004 meeting,

        Because they're going to stop right here. Because I don't play around with it.
        Transcript, p.10, lines18-20.

        You know, if they want to stir some stink, I'll show them how to stir it up. So I
        ain't going to play with them. I'll get the damn news people over there. I'll go to
        the Alabama Attorney General. I ain't playing. You know if they want to sir it
        up, we'll shake it up. Transcript, p. 13, lines 2-8.

        Speaking to his wife, Hutchinson: Don't play with them anymore. I'm not putting
        up with it. If I have to go down there and get an attorney. They're stealing stuff
        out the back door, and if he wants to let it go on, twenty-five pound bags of sugar
        and this and that and the other going on over there, if they want to let it fall - -.
        Transcript, p.20, lines 1-20.

        Adams (erroneously listed as Hutchinson in the Transcript) then states:
        I can see where this is going very easily. So you probably need to get you an
        attorney. I suggest you do that. You make - - Don't make claims that you can't
        support with evidence. I suggest you --. McCart then interrupts Adams.
        Transcript, p. 20, lines 9-14.

## II.

Plaintiff, in her Response, refers to the Board and its responsibilities and that it should have investigated the non-renewal of Plaintiff. Defendants emphasize that the Board's primary responsibility is to set Board Policy. The Board' hires a superintendent who is, in effect, the chief executive officer of the Board. The Superintendent is responsible for the day to day operations of the school system. Under Alabama law classified and certified personnel decisions are made by a recommendation by the superintendent to the Board. The Board takes the final action on those decisions. However, under Alabama law, the Board is also given the responsibility to hear and adjudicate appeals from personnel decisions. In this role, the Board acts as fact finder and decision maker much like a judge and jury. The Alabama case law arising from such appeals is very clear that the Board, in its capacity as judge and jury, must be fair and impartial; have not bias or preconceived ideas; make its decision based on the facts presented at an appeal; and not make decisions based on personnel or political reasons. In cases where the Board has had prior knowledge of the facts of a particular personnel issue, the appellate courts have held that the Board was not impartial.

Because of this standard to which a Board is held, Boards of Education do not do independent investigations of personnel issues. Boards rely on the recommendation of the Superintendent and very rarely do Boards know of the facts surrounding a personnel issue. The Board operates in this manner so that it can be a fair and impartial trier of fact.

This the 5th day of July 2007.

Respectfully Submitted,

/s/Sydney S. Smith
Smith & Smith, P.C.
Attorneys for Defendants
Russell County Board of Education
Larry E. DiChiara
1503 Broad Street
Phenix City, AL  36867
334-298-2679
ASB-4248-T82S

## CERTIFICATE OF SERVICE

I hereby certify that I have served the Motion for Summary Judgment upon Plaintiff's

counsel, by electronic filing and by email on this 5th day of July, 2007.

Joshua D. Wilson, Esq.
Rocco Calamusa, Jr., Esq.
Wiggins, Childs, Quinn & Pantazis, LLC.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
jwilson@wcqp.com
rcalamusa@wcqp.com

/s/ Sydney S. Smith