IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

ELIZABETH L. HUTCHINSON,               )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )        CIVIL ACTION NO.  3:06cv700-WHA
                                       )
PHENIX CITY BOARD OF                   )               (WO)
EDUCATION,  LARRY E. DICHIARA,         )
officially as Superintendent of the Phenix )
City Schools                           )
                    Defendants.        )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This cause is before the court on two Motions for Summary Judgment (Doc. #29 and Doc. #30), filed by Defendants Phenix City Board of Education and Larry DiChiara, respectively.  The Plaintiff, Elizabeth L. Hutchinson, brings claims of race discrimination, specifically claims of unlawful termination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, and by and through 42 U.S.C. § 1983 for alleged violations of 42 U.S.C. § 1981 and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

For the reasons to be discussed, the Motions for Summary Judgment are due to be GRANTED, in part, and DENIED, in part.

### II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The summary judgment rule is to be applied in employment discrimination cases as in any other case. *Chapman v. A1 Transport*, 229 F.3d 1012, 1026 (11th Cir. 2000) (en banc).

### III. <u>FACTS</u>

The submissions of the parties establish the following facts, construed in a light most favorable to the nonmovant:

Defendant Phenix City Board of Education ("the Board")[1] initially hired Plaintiff Elizabeth L. Hutchinson ("Hutchinson") as a child nutrition program worker ("CNP worker") for the 2003-2004 school year. The Board assigned Hutchinson to the South Girard School ("South Girard"). Following the 2003-2004 school term, the Board renewed Hutchinson's employment contract for the 2004-2005 school term. On May 13, 2005, school officials at South Girard informed Hutchinson that the Board would not renew her employment contract for the 2005-2006 school term. According to school officials, a nonrenewal acts as an effective termination of the employee. Hutchinson's last day of employment as a CNP worker at South Girard was May 19, 2005.

Throughout her employment, Hutchinson, a Caucasian female, was in the racial minority of CNP workers assigned to South Girard. Brenda Densel ("Densel"), also a Caucasian female, succeeded Beverly Walker, an African-American female, as CNP Manager for South Girard during the 2004-2005 school term, but Hutchinson nonetheless remained in the racial minority of CNP workers without supervisory duties in the cafeteria at South Girard for her entire period of

---

[1] For ease of discussion in the court's analysis, the court refers to the defendants collectively as "the Board," even though DiChiara, in his official capacity, is also a defendant. This reference does not dismiss DiChiara's role as a defendant in this case, but simply allows the court to use one simple term to discuss the defendants collectively.

employment.

Hutchinson's direct supervisor for the 2004-05 school year was Densel, CNP manager for South Girard, whereas Penny Passmore ("Passmore") was the CNP supervisor for the entire ten-school system.  Passmore reported directly to Mr. Adams ("Adams"), assistant school superintendent (now deceased), who in turn reported to Superintendent Dr. Larry DiChiara ("DiChiara").  Mr. Reginald Sparks ("Sparks") was the principal for South Girard.

During the two school terms that Hutchinson worked in the cafeteria at South Girard, Hutchinson was subjected to harassment based on her race.  Specifically, Betty Cliatt ("Cliatt"), an African-American co-worker, continually made derogatory comments regarding "white people," including such statements as "white people are trailer trash," "white people are stupid," "white people don't know how to do anything," and "it's the white people doing the crimes."  Cliatt also continually made the statement that "she was going to send [Hutchinson] to the black school so [Hutchinson] could learn to do things the black way."  In addition to these comments, Cliatt would harass Hutchinson in other ways related to Hutchinson's employment, including refusing to share a sink with her, refusing to wash any pans handed to her by Hutchinson, deliberately making a mess on the floor when Hutchinson was assigned to cleanup duty, and swinging a wet mop at Hutchinson's feet and legs thereby soaking her pants and shoes.  Cliatt did not harass any African-American co-workers in the same manner.  Hutchinson complained to Walker during 2003-04, and the next year to Walker's successor, Densel, several times, but despite reporting the racial harassment to her supervisors, the harassment continued.

On November 9, 2004, Hutchinson was injured while working in the South Girard

cafeteria when a co-worker "snatched" tongs from her hand, cutting her finger.[2]  Hutchinson

went to Densel's office to get a bandage.  Because there was no school nurse on campus at South

Girard, Densel took Hutchinson to the Board's Central Offices where she was seen by a staff

nurse.  Hutchinson was very emotional about the incident and again complained about the

harassment.  Accordingly, Densel told her that she should speak with Passmore, the system's

CNP supervisor, and Jeff Adams ("Adams"), the system's Assistant Superintendent of

Personnel.  Hutchinson spoke briefly with Passmore, but returned later that same afternoon with

her husband, Will McCart ("McCart"), in an attempt to make a formal complaint about the

harassment.

   Hutchinson and McCart went to Passmore's office and told Passmore that they wanted to

make a formal complaint about the hostile treatment.  They also requested to speak with Adams

and the Superintendent.  Adams later entered this meeting and McCart told him that Hutchinson

wanted to file a formal complaint regarding the racial hostility in her work environment.  Adams

indicated that Hutchinson would need to state some specific instances of hostility.  Hutchinson

then relayed to Adams what she had told Densel about her treatment.  Adams told her that she

needed to "turn a deaf ear to it." *Taped Transcript of Meeting,* at 19:10.

   On November 10th, the following day, Passmore met with Densel to discuss the previous

day's meeting.  They immediately drove together to principal Spark's office, where Passmore

---

[2] Accounts vary as to the specific object "snatched" from Hutchinson's hands. *E.g., Pl.'s Response* at 3 ("something"); *id.* at 8 ("tongs"); *Transcript of Meeting* at 3:15 ("stuff"); *Deposition of Pritchett* at 19:11 ("Saran Wrap"); *Def.'s EEOC Position Statement* at 3 ("clear wrap box" with "serrated cutting edge").  At any rate, a co-worker snatched an object from her, which cut her finger.  The nature of the object is inconsequential.  Out of deference to the plaintiff's account for summary judgment purposes, the court will assume it was tongs.

relayed the information to him. At the conclusion of their conversation, Densel commented, "Unless you don't agree with me, I'm going to recommend that Ms. Hutchinson be nonrenewed for the next school year."[3]  Sparks and Passmore both agreed with Densel.

Based on the November 10th meeting, a recommendation was made "from the Child Nutrition Manager"[4] that Hutchinson be nonrenewed. *Depo. of Joshua Laney* at 22:6-7. No further investigation was made. After the manager's recommendation, the Assistant Superintendent's office simply "follow[ed] it from there." *Id.* at 22:17-18. Adams therefore included Hutchinson as a nonrenewal on his list of tenure and nonrenewal recommendations to Superintendent DiChiara, who relied without question on the list in making his recommendations to the Board. *DiChiara Depo.* at 25:11-26:7, 48:1-49:15. The Board, in turn, relied solely on DiChiara's recommendation in deciding to nonrenew Hutchinson's contract. *Depo. of Lori White*, 24:1-23, 31: 1-12.

---

[3]This was Densel's one and only recommendation in her three years with the school system. *Densel Depo.* at 47:17-22. She signed no forms or other paperwork in association with Hutchinson's nonrenewal. *Id.* at 48:5-8. In contrast, Passmore, the system CNP supervisor, had done other nonrenewals before and after Hutchinson's, although she couldn't recall the exact number. *Passmore Depo.* at 22:22-23.

[4]In identifying the final decisionmaker, it is unclear from the evidence before the court whether it was Densel, the CNP Manager for South Girard who stated she was going to make such a recommendation, or Passmore, who supervised the CNP program for entire school system. On the one hand, Densel stated that she was going to make the recommendation, and testimony indicates that the recommendation had come from the Brenda, the "Manager" (as opposed to Passmore's title of "Supervisor"). (*Laney Depo.* 22:5-7; *Passman Depo.* (Doc. #38-3) at 82:15-83:14). On the other hand, Densel had never before made a recommendation, and has not made one since, whereas Passmore has made multiple recommendations, although the precise number is unknown. *See supra* note 3. Regardless of whether it was Passmore or Densel, the testimony shows that the recommendation was made at the CNP level on November 10th and subsequently passed up the chain of command without question or independent investigation, until its ratification by the Board. For purposes of this motion, therefore, this court considers Passmore and Densel to be the final decisionmakers.

Hutchinson was not informed of this decision, however, until May.  At that time, after being informed of her nonrenewal, Hutchinson and her husband met with DiChiara to again discuss their unhappiness with her termination.  Mary Carter, an African-American female, replaced Hutchinson for the 2005-06 school year.

## IV. <u>DISCUSSION</u>

Hutchinson brings claims for unlawful termination, hostile work environment, and retaliation.  The court will address each of these claims in turn.

### A. *Hutchinson's Claims of Unlawful Termination*

Hutchinson brings claims for unlawful termination under (1) Title VII, (2) § 1981 by and through § 1983, and (3) the Equal Protection Clause of the Fourteenth Amendment by and through § 1983.[5]  Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, privileges of employment, because of such individual's race, color, religion, sex or national origin. . . ." 42 U.S.C. § 2000e-2(a)(1).  In the Eleventh Circuit, there are three methods by which a plaintiff may prove discrimination: (1) direct evidence of discriminatory intent; (2) statistical evidence; and (3) circumstantial evidence.  *Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1555-56 (11th Cir. 1995).  In the present case, Hutchinson presents only circumstantial evidence in support of her claim of racial

---

[5] The analytical framework and proof requirements for claims of discrimination under Title VII, § 1981 and the Fourteenth Amendment through § 1983 are identical.  Accordingly, the court shall explicitly address the Title VII claim with the understanding that this analysis applies to the other claims as well.  *See Standard v. A.B.E.L. Servs., Inc*., 161 F.3d 1318, 1330 (11 th Cir.); *Hardin v. Stynchcomb*, 691 F.2d 1364, 1369 (11th Cir. 1982) (holding that when § 1983 is used as a parallel remedy to Title VII, the elements are the same); *Whiting v. Jackson State Univ.*, 616 F.2d 116, 122 (5th Cir. 1980).

discrimination.

Where, as here, a plaintiff seeks to prove intentional discrimination on the basis of race under Title VII by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000).

**1.** ***Prima Facie Case***

In a reverse discrimination suit, to establish a *McDonnell Douglas* prima facie case, the reverse discrimination plaintiff must prove: (1) that she belongs to a class; (2) that she was qualified for the job; (3) that she was subject to an adverse employment action; and (4) that she was replaced by a person outside her class. *See generally Wilson v. Bailey*, 934 F.2d 301, 304 (11th Cir. 1991).

Here, Hutchinson has established this prima facie case.  First, Hutchinson has presented evidence that she is a Caucasian female who worked in the South Girard cafeteria with primarily African-American co-workers.  In fact, during the 2004-2005 school year, Hutchinson was the only Caucasian nonsupervisory CNP worker in the South Girard cafeteria.  Accordingly, as a Caucasian female in the South Girard cafeteria environment, Hutchinson was a member of a class.  Second, it is self-evident that Hutchinson was qualified for the position as a CNP worker, as she was hired for the 2003-2004 school term and her contract was renewed for the 2004-2005 school term.  Moreover, Hutchinson has presented evidence that she was rated as a qualified employee without significant performance issues.  *See Plaintiff's Exh. K*, *Hutchinson Performance Evaluation 2004* and *Plaintiff's Exh. M*, *Hutchinson Performance Evaluation* 2005.  Third, Hutchinson was subject to an adverse employment action in the form of nonrenewal of her employment contract for the 2005-2006 school term, which, according to Hutchinson's termination letter (*Plaintiff's Exh. N*) and deposition testimony (*Deposition of Passmore* at 22:10-17; *Deposition of Densel* at 60:18-20), essentially serves as termination of employment.[6]

---

[6] In the Board's brief, the Board argues that Hutchinson was a probationary employee under Alabama's Fair Dismissal Act, Ala. Code § 36-26-100, *et seq*.  To the extent that this argument may attempt to establish that no adverse employment action occurred, the court is unpersuaded.

As Hutchinson noted, "[t]he purpose of the Fair Dismissal Act . . . is 'to provide nonteacher employees a fair and swift resolution of proposed employment terminations.'"  *Ex parte Athens State Coll.*, 795 So.2d 709, 714 (Ala. 2000).  The Act doesn't intend to give the state the right to violate federal law in the termination of an employee so long as that employee remains within this probationary status.  While the Board correctly contends that Hutchinson had no right to further employment under her contract beyond the 2004-2005 school year, this assertion does not preclude the court from finding that Hutchinson's nonrenewal was an adverse employment action.

Simply, Hutchinson argues that her nonrenewal was based on racial discrimination.  The Fair Dismissal Act in no way forecloses a claim for discrimination under Title VII merely because Hutchinson was not guaranteed renewal.  Such a result would undermine the basic civil

Fourth, Hutchinson has also presented evidence that she was replaced by Mary Carter, an African-American female. *See Defendant's Reponses to Plaintiff's Discovery* (indicating that Hutchinson's replacement was Mary Walker, later identified correctly as Mary Carter). Accordingly, Hutchinson was replaced by a person outside of her class. Therefore, based on all of the aforementioned evidence, Hutchinson has established a prima facie case of discrimination under *McDonnell Douglas*.

### 2. *Nondiscriminatory Reason*

Because Hutchinson successfully has stated a prima facie case for racial discrimination, under the *McDonnell Douglas* framework, the burden shifts to the Board to give a nondiscriminatory reason for Hutchinson's termination. In its brief, the Board argues that Densel made the initial decision to nonrenew Hutchinson. (*Deposition of Densel* at 46:13-47:6.) This decision was based on safety concerns stemming from Passmore's indication that, during the meeting on November 9, 2004 and other times, McCart was angry and potentially a safety threat. *See Deposition of Passmore* at 83:23-84:1 (indicating that McCart was "loud and intimidating" in the Nov. 9 meeting); *Deposition of DiChiara* at 53:12-18 (McCart "scared" Passmore, who found him "intimidating" and he hung around the school a lot as a "daily presence"); *Board's EEOC Position Statement*, at 3 (describing McCart as "irate . . . seemingly out of control and . . . making accusations")[7]. Therefore, the primary nondiscriminatory reason

---

rights protected under federal law.

[7]In her *Response in Opposition to Defendant's Motion for Summary Judgment* ("*Plaintiff's Response*"), Hutchinson alleges that DiChiara stated that the meeting was "cordial." *Plaintiff's Response* at 13 n.4. Taken in its proper context, DiChiara responded to plaintiff attorney's suggestion that it was cordial by saying, "I would characterize that for the most part it was cordial. Yeah, I would say for the most part, but there were times that it wasn't as cordial."

given by the Board for Hutchinson's termination is that the Board believed Hutchinson's

continued employment raised a threat to other employees because of her husband's intimidating

actions, particularly at the November 9 meeting.

### 3. *Pretext*

Under the *McDonnell Douglas-Burdine* framework, the burden now shifts back to

Hutchinson to demonstrate that the nondiscriminatory reason given by the Board is merely

pretextual. The Eleventh Circuit has held that, once the defendant produces a nondiscriminatory

reason that dispels the presumption of discrimination, a plaintiff then must produce sufficient

evidence that a reasonable factfinder could determine that the nondiscriminatory reason given by

the defendant is not the true reason for the adverse employment action. *Cooper v. Southern Co.*,

390 F.3d 695, 725 (11th Cir. 2004). "To show that the employer's reasons were pretextual, the

plaintiff must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons for its action that a reasonable

factfinder could find them unworthy of credence.'" *Id.* (*quoting Combs v. Plantation Patterns*,

106 F.3d 1519, 1528 (11th Cir. 1997)). The Eleventh Circuit has further determined that "[i]f

the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact

regarding whether each of the defendant employer's articulated reasons is pretextual, the

employer is entitled to summary judgment on the plaintiff's claim." *Chapman v. AI Transport*,

229 F.3d 1012, 1024-25 (11th Cir. 2000).

In proving pretext, if the proffered nondiscriminatory reason "is one that might motivate

---

*Deposition of DiChiara*, at 64:23-65:3. DiChiara then continues to tell how Adams and
Passmore indicated that McCart's tone was "very threatening." *Id.* at 65:10.

a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id.* at 1030. Accordingly, an employer "may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984). If multiple nondiscriminatory reasons are proffered, the plaintiff must prove pretext as to each of them – so long as one nondiscriminatory reason remains, Hutchinson has failed to successfully establish pretext. *See Chapman*, 229 F.3d at 1024-25 ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.").

In the present case, Hutchinson argues primarily that the inconsistent reasons proffered by individuals within the "chain of command" leading up to her nonrenewal by the Board sufficiently create a question of fact as to whether the nondiscriminatory reason given by the Board was pretextual. Specifically, Passmore and Densel both indicate that Hutchinson was terminated because her husband, McCart, presented a potential safety threat based on his behavior at the November 9 meeting,[8] whereas Reginald Sparks, who was present at the November 10th meeting with Passmore and Densel, and the Board's EEOC Statement indicate that Hutchinson's nonrenewal was based on poor performance, excessive complaints, and an inability to work cooperatively with the rest of the team. *Sparks Depo.* at 29:3-3:13, *Def.'s EEOC Position Statement* at 3.

---

[8] *See supra* note 7 and accompanying text.

In making this argument, Hutchinson relies on *Bechtel Constr. Co. v. Secretary of Labor*, 50 F.3d 926 (11th Cir. 1995), *Tidwell v. Carter Prods.*, 135 F.3d 1422 (11th Cir. 1998), and *Stallworth v. E-Z Serve Convenience Stores*, No. 99-D-1503-N, 2001 WL 125304, slip. op. at *4-*5 (M.D. Ala. Feb. 12, 2001) (DeMent, J.).

In *Bechtel*, the Eleventh Circuit held that inconsistent reasons for termination articulated by an employer can be evidence of pretext. *Bechtel*, 50 F.3d at 935. In *Tidwell*, however, the Eleventh Circuit provided a more detailed explanation of the effect of such evidence, essentially minimizing the breadth of *Bechtel*. *Tidwell*, 135 F.3d at 1427-28. *Tidwell* noted that inconsistencies in an employer's testimony can be evidence of pretext, but concurrently recognized that the existence of an additional nondiscriminatory reason is not automatically "inconsistent" and does not prove pretext. *Id.* at 1428.

In *Stallworth*, another judge in this district interpreted the *Bechtel* decision to mean that when an employer offers conflicting reasons for an employment action, such inconsistent reasons can establish pretext. *Stallworth*, 2001 WL 125304 at *4. On two occasions, the defendant in *Stallworth* said that a particular reason was the sole reason for termination, but then, on a subsequent occasion, gave an additional reason. The court concluded that, even if the second reason could be viewed as complementing the first, because the defendant had previously insisted that there was only one reason, a jury could conclude that the reasons are inconsistent and, therefore, incredible.[9] *Id.*

Hutchinson's reliance on these cases fails to account for their important distinctions.

---

[9] For a more detailed analysis of *Bechtel*, *Tidwell* and *Stallworth*, *see Lewis v. Chattahoochee Valley Cmty. Coll.*, 136 F. Supp. 2d 1232 (M.D. Ala. 2001) (Albritton, J.); *see also Lett v. Reliable Ruskin*, No. 1:05cv479-WHA, 2006 WL 2056582, slip op. at *13-*15 (M.D. Ala.. July 24, 2006) (Albritton, J.).

First, *Tidwell* does not support Hutchinson's position, but rather indicates that an additional nondiscriminatory reason is not necessarily proof of pretext, essentially contradicting Hutchinson's argument. Second, the facts in the present case more closely resemble the facts of *Tidwell*, rather than the facts in *Bechtel* and *Stallworth*. In *Bechtel*, the employer initially denied a reason for the action and then later gave that exact reason, creating a blatant "inconsistency." *See Bechtel*, 50 F.3d at 935. In *Stallworth*, the employer initially stated that a particular reason was the *only* reason but later recanted and provided additional reasons, thereby creating a blatant "inconsistency." *Stallworth*, 2001 WL 125304 at *4. In contrast, in the present case, two distinct decision makers within the chain of command have promulgated two separate, but not "inconsistent," reasons for Hutchinson's dismissal - (1) that McCart was a potential threat and (2) poor performance / inability to work in a team environment. At no time has the Board, or any individual within the chain of command, denied either of these reasons or indicated that one of these reasons was the sole reason for dismissal.[10] Accordingly, even though Hutchinson claims that these reasons are "inconsistent," thereby providing an evidentiary basis for pretext, the court finds that these two reasons can coexist, each as an additional nondiscriminatory reason to the other. Following the *Tidwell* precedent, these two reasons are not "inconsistent" and do

---

[10] Hutchinson attempts to paint Sparks' citation of poor performance as a suggestion that the alleged threat posed by McCart could *not* be the true reason. This is not supported by the record. Although Sparks offers a different reason—poor performance and inability to work as a team—for Hutchinson's nonrenewal, he doesn't state that the safety threat posed by McCart was *not* a possible reason for Hutchinson's renewal or that anyone suggested the job performance was the sole reason. He merely replied, when asked for the reason, that "ability to work as a team" was the "main[]" reason. *Sparks Depo.* at 29:11-13. When asked about whether McCart could have been a reason, Sparks did not say no, but merely that he didn't recall anyone bringing up McCart as a threat at the particular meeting which he attended. *Id.* at 31:1-10. This testimony cannot therefore be construed as creating a true inconsistency as opposed to a different opinion as to the "main" reason that Hutchinson was nonrenewed.

not prove pretext.

Besides her inconsistency argument, Hutchinson also attacks the Board's "safety threat" reason directly, albeit in cursory fashion, stating that none of the defendants can "state that anything McCart did was violent and Passmore understood that he was upset because his wife had been cut on her hand." *Pl.'s Response in Opposition to Motion for Summary Judgment* at 29-30; *see also id.* at 13 n.4 ("Plaintiff notes that Mr. McCart did nothing that could be construed as violent during any meeting. Passmore understood that McCart was upset because he [sic] wife got hurt that day.")  Furthermore, Hutchinson argues, DiChiara characterizes his May post-termination meeting with McCart and Hutchinson as "cordial." *Id.*

This argument, like the inconsistency argument, does not sufficiently prove that the proffered reason of McCart's "irate" behavior on November 9th was pretextual.  Even taking all facts and inferences in favor of Hutchinson, this evidence goes towards proving that the school's assessment of McCart's behavior may have been *unwise* or an *overreaction*, but does not constitute probative evidence that the proffered reason was *untrue* or *fabricated*.  Whether the proffered reason that McCart posed a safety threat was a "good reason, a bad reason, a reason based on erroneous facts, or [] no reason at all," *Nix,* 738 F.2d  at 1187, it is not a *discriminatory* reason, and Hutchinson cannot rebut it "by simply quarreling with the wisdom of that reason," *Chapman*, 229 F.3d at 1030.

As the court notes, Hutchinson's argument does not create a genuine issue of material fact regarding whether the defendant's proffered reason is *credible* or *pretextual*, but rather attempts to attack the *wisdom* of the defendants' rationale for arriving at the conclusion that McCart was threatening.  Although irrelevant for purposes of summary judgment, the court notes

that, while defendants do not allege physical violence, they present substantial testimony that McCart was "loud and intimidating," "irate," "out of control," "very threatening" and hanging around the school as "a daily presence." *See Passmore Depo.* at 83:23-84:1; *DiChiara Depo.* at 53:12-18.  Hutchinson does not attempt to dispute this testimony, except to characterize DiChiara's description of his post-termination meeting with McCart as "cordial." *Pl.'s Response* at 13 n.4.  This characterization is misleading.  After the plaintiff's attorney suggested to DiChiara that the audiotaped meeting sounded cordial, DiChiara replied, "Yeah, I would say for the most part, but there were times that it wasn't as cordial." *Id.* at 64:23-65:3. DiChiara then continued to tell how Adams and Passmore found McCart's tone "very threatening." *Id.* at 65:10. Even if the wisdom of the defendants' safety assessment of McCart were relevant to the veracity of its proffered reason, therefore, Hutchinson's reference to McCart's lack of physical violence fails to sufficiently demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions . . . that a reasonable factfinder could find [the proffered reason] unworthy of credence." *Cooper v. Southern Co.*, 390 F.3d 695, 7235 (11th Cir. 2004) (internal quotations omitted).

　　　　To accept that Hutchinson's characterization creates an issue of fact for trial would be to engage in second-guessing school officials' discretionary judgment as to the safety of its campus. *See, e.g., Amos v. Tyson Foods, Inc.*, 153 Fed. Appx. 637, 648 n.9 (11th Cir. 2005) (per curiam) (unpublished) (rejecting plaintiff's argument that defendant couldn't use workplace violence policy against her because she was not physically at work when she threatened co-worker, on grounds that it would force the court to "second guess" the elements of the policy and "when those elements are met.").

16

It should be noted that Hutchinson does present further arguments for pretext regarding the other nondiscriminatory reasons given: poor performance and inability to work in a team environment.  The success of these arguments is irrelevant because, as discussed above, Hutchinson fails to establish that one proffered reason—that McCart was a potential threat—was pretextual.  So long as one nondiscriminatory reason remains,  Hutchinson has failed to successfully establish pretext.  *See Chapman*, 229 F.3d at 1024-25 ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.").  Therefore, under the *McDonnell Douglas-Burdine* framework, summary judgment on Hutchinson's claims of unlawful termination is appropriate, and the Defendants' Motion for Summary Judgment in that regard is due to be GRANTED.

### B. *Hutchinson's Hostile Work Environment Claim*

Hutchinson brings her hostile work environment claims under (1) Title VII, (2) § 1981 by and through § 1983, and (3) the Equal Protection Clause of the Fourteenth Amendment by and through § 1983.[11]  To establish a claim for hostile work environment under Title VII, a plaintiff must prove that the workplace is permeated with discriminatory intimidation, ridicule, and insult so severe or pervasive that such actions alter the conditions of the victim's employment, thereby creating an abusive working environment.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  In doing so, the plaintiff must show: (1) that she belongs to a protected group; (2) that she was subject to unwelcome harassment; (3) that the harassment was based on a protected

---

[11] Again, because the analytical framework and proof requirements for claims of discrimination under the relevant statutes are identical, the court shall explicitly address only the Title VII claim with the understanding that this analysis applies to the other claims as well.  *See* n.3, *supra.*

characteristic of the employee, such as race or national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability. *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002).

In the present case, the Defendants move for summary judgement on this hostile work environment claim solely based on the argument that Hutchinson has not produced sufficient evidence to satisfy the fourth element listed above - that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment. This element has both an objective component and a subjective component. "To be actionable, [the harassing] behavior must result in both an environment 'that a reasonable person would find hostile or abusive' and an environment that the victim 'subjectively perceive[s] . . . to be abusive.'" *Id.* at 1276. There is no question in this case as to whether Hutchinson subjectively perceived Cliatt's actions and remarks as hostile and abusive. It is apparent that Hutchinson attempted to report this harassment as abusive in the Nov. 9 meeting with Passmore and Adams after making several informal complaints about the abusive behavior to her direct supervisors. Accordingly, the court will focus on the objective determination of whether, based on the evidence viewed in a light most favorable to the plaintiff, a reasonable person would find that Cliatt's treatment of Hutchinson was hostile or abusive.

The Eleventh Circuit considers several factors in making this objective determination: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct

unreasonably interferes with the employee's job performance. *Id.* (citing *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997)). Moreover, the Eleventh Circuit recognizes that, in making this objectiveness determination, the court should consider the totality of the circumstances, not any one single factor. *Miller*, 277 F.3d at 1276. Applying this framework in the present case, the court finds that Hutchinson has presented sufficient evidence to raise a question of fact in regards to whether Cliatt's harassment was hostile or abusive.

First, Hutchinson has produced sufficient evidence for a reasonable factfinder to determine that Cliatt's harassment occurred throughout Hutchinson's employment. In fact, Hutchinson has testified that, throughout her two years at South Girard, Cliatt "constantly" told her that "she was going to send [her] to the black school so that she could learn how to do things the black way." *See Deposition of Hutchinson,* at 68:21-73:10). Hutchinson also has testified that she complained of Cliatt's ongoing harassment to both of her CNP managers, Walker in 2003-2004 and Densel in 2004-2005. *Id.* at 73 and 75-76. Furthermore, in her answers to the Defendants' interrogatories, Hutchinson again indicates that Cliatt's treatment was ongoing throughout her employment and was racially motivated. *See Plaintiff's Response to Defendants' Discovery,* at 2-3 (providing numerous specific statements made by Cliatt regarding race, as well as specific instances of threatening or physical actions by Cliatt against Hutchinson). Accordingly, the court finds that a reasonable person could determine that the harassment was ongoing throughout Hutchinson's employment.

Second, in determining the severity of the harassment and whether the harassment was physically threatening, the court finds that Hutchinson has presented sufficient evidence so that a reasonable factfinder could determine that the harassment was severe, as well as physically

19

threatening.  Specifically, Hutchinson presents evidence that Cliatt repeatedly talked about "white people" and referred to them as "trailer trash."  *Id.*  Although on its face the term "trailer trash" is not an express race-based insult as severe as other common nefarious terminology, the court believes that a reasonable person plausibly could determine that, under modern slang parlance, the reference to "white people" being  "trailer trash" is a racial slur.  *See Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 676 (7th Cir. 1993) (holding that a district court did not err in determining that a facially race-neutral insult reasonably could be construed as a racial slur).  Moreover, applying a comparable rationale, the court believes that a reasonable person could find that Cliatt's repeated reference to "taking [Hutchinson] to the black school so that [she] could learn to do things the black way" was physically threatening.  This reference contains no explicit threat.  Coupled with her other actions, including striking Hutchinson in the legs and feet with a wet mop, however, a reasonable person could determine that such a statement was threatening.

Finally, Hutchinson also has presented adequate evidence for a reasonable person to determine that Cliatt's conduct interfered with her job performance.  One specific example occurred on several occasions.  When Hutchinson was assigned to mop duty, Cliatt deliberately would "pour food juice out of the pots onto the floor, look at [Hutchinson] and then laugh and tell [her] that [she] had missed a spot."  *Plaintiff's Response to Defendants' Discovery,* at 4.  Cliatt also would refuse to share the sink or her work area with Hutchinson, but such behavior was not simulated with Cliatt's African-American co-workers.  *Id.* at 3.  Furthermore, Cliatt often refused to wash pans and dishes handed to her by Hutchinson.  *Id.*  Assessing these actions, the court believes that a reasonable person could determine that Cliatt's actions effectively

interfered with Hutchinson's job performance.

Viewing the evidence in a light most favorable to Hutchinson and considering the totality of the circumstances surrounding Cliatt's harassment of Hutchinson, the court believes that a reasonable factfinder could determine that Cliatt's harassment of Hutchinson was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment. Accordingly, the Defendants' Motion for Summary Judgment in regard to the hostile work environment claim is due to be DENIED.

### C. *Hutchinson's Retaliation Claim*

Hutchinson brings retaliation claims under (1) Title VII, (2) § 1981 by and through § 1983, and (3) the Equal Protection Clause of the Fourteenth Amendment by and through § 1983.[12] Title VII provides a cause of action against an employer for retaliating against an employee who "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Claims of retaliation which are based on circumstantial evidence, like those of the parties in the present controversy, follow the traditional *McDonnell Douglas* tripartite framework of shifting burdens of proof. *Meeks v. Computer Assoc. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994); *see also Swanson v. Civil Air Patrol*, 37 F. Supp. 2d 1312, 1325 (M.D. Ala. 1998).

---

[12] As noted above, the analytical framework and proof requirements for claims of discrimination under Title VII and §1981 are identical. Thus, the court shall explicitly address the Title VII claim with the understanding that this analysis applies to the §1981 claim as well. *See* n. 3, *supra*.

In regard to Hutchinson's retaliation claim under the Equal Protection Clause of the Fourteenth Amendment, no such claim exists under the Fourteenth Amendment. *See Ratliff v. Dekalb County, Ga.*, 62 F.3d 338, 340-41 (11th Cir. 1995) (holding that no established right exists under the Equal Protection Clause to be free from retaliation).

**1. *Prima Facie Case***

Under the *McDonnell Douglas* framework, Hutchinson must first prove a prima facie case of retaliation.  To establish this prima facie case, Hutchinson must prove the following elements: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision.  *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000).

Regarding participation in a protected activity, Hutchinson complained to her supervisors about the harassment to which she was subjected.  The Eleventh Circuit has noted that the protection under Title VII "is not limited to individuals who have filed formal complaints, but extends as well to those . . . who informally voice complaints to their superiors. . . ."  *Rollins v. State of Fla. Dept.of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989); *see also Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716  n. 2 (11th Cir. 2002).  The Eleventh Circuit further has noted, however, that not all complaints to superiors qualify as participation in a protected activity.  Instead, a plaintiff must show that she had a good faith reasonable belief that the employer was engaged in unlawful employment practices, meaning that the plaintiff's complaint must have been objectively reasonable.  *See Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1211 (11th Cir. 2002).

In the present case, Hutchinson's complaints regarding racial harassment were objectively reasonable.  As noted above, based on the facts viewed in a light most favorable to Hutchinson, a reasonable person could find that Hutchinson was subject to a hostile work environment resulting from Cliatt's harassment.  In turn, Hutchinson's belief that the Board was

engaged in an unlawful employment practice by allowing a hostile work environment to exist was objectively reasonable. Accordingly, Hutchinson has satisfied the first prong of the prima facie case for her retaliation claim.

Regarding the second prong, the court finds that Hutchinson suffered an adverse employment action when her employment contract was not renewed. The deposition testimony of Passmore indicates that nonrenewal is equivalent to termination. *Deposition of Passmore*, at 22:10-17. Although the Board argues that Hutchinson was a probationary employee and had no right to renewal, thereby meaning that her nonrenewal was not an adverse employment action, the court is unpersuaded by this argument. *See* n. 4, *supra*. Therefore, Hutchinson has satisfied the second prong of the prima facie case for her retaliation claim.

Finally, regarding the causal connection prong, the Eleventh Circuit has stated that "[t]o establish that causal connection, a plaintiff need only show 'that the protected activity and the adverse action were not wholly unrelated.'" *Clover v. Total System Services, Inc*., 176 F.3d 1346, 1354 (11th Cir. 1999) (quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir.1985)). "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). Furthermore, "a plaintiff satisfies this [causal connection] element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999).

In the present case, the deposition testimony of both Passmore and Densel indicate that

the decision to nonrenew Hutchinson's employment contract was made on November 10, 2004—the very next day after the November 9 meeting in which Hutchinson and McCart notified Passmore and Adams of Cliatt's discriminatory harassment. *Deposition of Passmore,* at 82:13-83:14; *Deposition of Densel,* at 46:13-49:5. Passmore, the CNP supervisor, was present at both the November 9 meetings with Adams and the November 10 meeting with Sparks and Densel. The court finds that a reasonable person could determine that the decision-makers in regard to Hutchinson's nonrenewal, Densel and Passmore,[13] were aware of Hutchinson's protected activity of attempting to state a formal complaint regarding her hostile work environment. Accordingly, Hutchinson has satisfied the third prong of the prima facie case, thereby satisfying the entire prima facie case for retaliation.

**2. *Nondiscriminatory Reason and Pretext***

Hutchinson relies on the same arguments with respect to pretext for her retaliation claims, which are the subject of the courts's discussion of Hutchinson's unlawful termination claims. As discussed above, as its nondiscriminatory reason for Hutchinson's dismissal, the Board sets forth the fact that Hutchinson's husband, McCart, was viewed as a potential threat based on his actions, particularly at the November 9 meeting. Because Hutchinson fails to present sufficient evidence that this reason is pretextual, summary judgment is appropriate. Therefore, in regard to all of Hutchinson's claims for retaliation, summary judgment is due to be GRANTED.

**IV**. **CONCLUSION**

For the reasons discussed, it is hereby ORDERED as follows:

---

[13]*See supra* note 4.

1.  In regard to Hutchinson's unlawful termination claims in Count One, Count Two and Count Three of the Amended Complaint, the Defendants' Motions for Summary Judgement are GRANTED, and judgment is entered in favor of the Board and DiChiara and against Hutchinson on those claims.

2.  In regard to Hutchinson's hostile work environment claims set forth in Count One, Count Two and Count Three of the Amended Complaint, the Defendants' Motions for Summary Judgment are DENIED.

3.  In regard to Hutchinson's retaliation claims in Count Four, Count Five and Count Six of the Amended Complaint, the Defendants' Motions for Summary Judgement are GRANTED, and judgment is entered in favor of the Board and DiChiara and against Hutchinson on those claims..

4.  This case will proceed only on the hostile work environment claims set forth in Count One, Count Two and Count Three of the Amended Complaint.

DONE this 9th day of November, 2007.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE