IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH LYNNE HUTCHINSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>PHENIX CITY BOARD OF EDUCATION, )<br>LARRY E. DICHIARA, officially as )<br>Superintendent of the Phenix City Schools )<br>)<br>)<br>Defendants. ) | Civil Action No.: 3:06-cv-700-WHA<br><br>JURY DEMAND |

**ORDER ON PRETRIAL HEARING**

A pretrial hearing was held on this case on May 30, 2008, wherein the following

proceedings were held and actions taken:

**PARTIES AND TRIAL COUNSEL:**

  **1. COUNSEL APPEARING AT PRETRIAL CONFERENCE**

Joshua D. Wilson
Rocco Calamusa
Wiggins, Childs, Quinn and Pantazis, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
*Attorneys for Plaintiff*

Sydney S. Smith
Smith & Smith, PC
1503 Broad Street
Phenix City, AL 36867
*Attorney for Defendants*

2. **JURISDICTION AND VENUE**

The jurisdiction of this Court is invoked pursuant to the Act of Congress known as 28 U.S.C. §§ 1331, 1334(4), 2201 and 2202, 42 U.S.C. §2000e *et seq*.  This suit is authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. §2000e *et seq*., the "Civil Rights Act of 1991", 42 U.S.C. §1981 and 42 U.S.C. § 1983 and the Equal Protection clause of the Fourteenth Amendment.  The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by 42 U.S.C. §2000 et seq. providing for injunctive and other relief against race discrimination in employment.  Venue is not disputed.

3. **PLEADINGS:**   The following pleadings and amendments were allowed:

    a.   Complaint

    b.   Answer to Complaint by Phenix City Board of Education

    c.   First Amended Answer by Phenix City Board of Education

    d.   Amended Complaint

    e.   Answer and Defenses of Defendants Phenix City Board of Education and Larry E. Dichiara to Plaintiff's Amended Complaint

4. **CONTENTIONS OF THE PARTIES:**

    a.   **Contentions of Plaintiff:**

> *Violations of Race Discrimination Violation of Title VII and 42 U.S.C. § 1981 through 42 U.S.C. § 1983 and of the Equal Protection Clause of the Fourteenth Amendment.*

The Plaintiff, Elizabeth Lynne Hutchinson, (hereinafter "Plaintiff" or "Hutchinson") contends that the Defendants, the Phenix City Board of Education (hereinafter "the Board") and Larry E. DiChiara (hereinafter "DiChiara"), officially as Superintendent of the Phenix City Schools racially

discriminated against her by allowing a racially hostile work environment to permeate the workplace which eventually led to Plaintiff's termination. Such actions are in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981(a) (hereinafter "Title VII"); 42 U.S.C. § 1981 (hereinafter "§ 1981"); and the Fourteenth Amendment to the Constitution of the United States. Plaintiff asserts her claims for relief for the defendants' violations of Title VII, § 1981 and the Fourteenth Amendment through 42 U.S.C. § 1983 (hereinafter "§ 1983").

Plaintiff is a white female who worked with all black co-workers in a predominantly black school and predominantly black neighborhood. Plaintiff was employed as a Child Nutrition Program worker ("CNP") at South Girard School. Plaintiff had always been a satisfactory employee who had no performance problems, received good reviews and was well-liked by her supervisors.

However, during the two school terms (2003-2004 & 2004-2005) that Plaintiff was employed at South Girard, she suffered a great deal of racial harassment by a black co-worker, Betty Cliatt. Cliatt made numerous racially derogatory comments, remarks and threats directed at Plaintiff's race which amounted to a hostile work environment that affected the terms and conditions of Plaintiff's employment.

Cliatt constantly told Plaintiff she was going to send her to the "black school" so she could learn to do things the "black way." Plaintiff reported this to Beverly Walker, her former supervisor. Cliatt also told Plaintiff "white people are stupid." Plaintiff reported this to both Walker and Brenda Densel, who became the CNP Manager. Plaintiff explained to Densel when Densel became the new supervisor for 2004-2005 that she had problems with Cliatt and Densel told her that things were going to be different.

Plaintiff told Densel about race issues and that some of the employees didn't want to work as hard as the other employees or follow directions. She told Densel how Cliatt liked to run her mouth and criticize white people and say that white people are nothing but trailer trash. Over the course of her employment Cliatt made numerous complaints to Plaintiff including, but not limited to the following:

> (1) Cliatt said she was going to send me to the black school so I could learn to do things the black way; (2) "White people are so stupid"; (3) "White people can't cook"; (4) "White people don't know how to do anything"; (5) "White people are always putting the blame on black people because they are black"; (6) "It's the white people doing the crimes"; (7) "White people are sorry"; (8) "All white people are white trailer trash"; (9) "White people take things that don't belong to them"; (10) "Whites are nothing but trailer trash"; (11) "Ain't no white trailer trash going to be putting their face over my food"; (12) During the Michael Jackson trial Cliatt stated that it was all about some white trash trying to get Jackson's money; (13) White people are just ugly, the way they look as human beings; (14) Why is Brenda Densel sending her white trailer trash daughter to check on us, she has no authority over us; (15) Cliatt would criticize Brenda Densel saying things like "this white trailer trash don't know what she's doing"; (16) White trailer trash abuses black people; (17) It's actually white people doing the crimes and blaming it on the black people; (18) White people are up to no good; (19) White trailer trash has to send her white trailer trash to check up on us.

Plaintiff explained to Densel that Cliatt treated her this way because she was the only white employee working in the area.

Additionally, Cliatt made remarks to her such as "When you walk past me you say excuse me." However, she didn't do this to the black employees. Cliatt did not want to, and on occasion, would refuse to share the sink or work area with her, however, she would share with the other black girls. When Plaintiff was assigned to wash pans, Cliatt would not wash any of the pans that Plaintiff gave to her and would only wash pans if she received them from the black employees. Cliatt often falsely accused Plaintiff of taking her food. Cliatt would go out of her way to interfere with Plaintiff

doing her job and would try to make things harder on Plaintiff. Cliatt did not treat black co-workers in a similar manner. On one occasions, Cliatt struck Plaintiff in the legs and feet with wet mop. Furthermore, Cliatt would interfere with Plaintiff's work by deliberately pouring food on the floor while Plaintiff was performing mop duty. Cliatt would also refuse to share the sink or her work area with Plaintiff, but would allow black employees to share.

These racially motivated attacks by Cliatt toward Plaintiff were so frequent, so physically and emotionally threatening, and so humiliating that the environment as a whole was sufficiently severe and pervasive to amount to a hostile work environment that altered the terms and conditions of her employment. See *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); see also *Hulsey v. Pride Rest., LLC*, 367 F.3d 1238 (11th Cir. 2004); *Olson v. Lowe's Home Centers Inc.*, 130 Fed. Appx. 380 (11th Cir. 2005); *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501 (11th Cir. 2000); *Dees v. Johnson Controls World Services, Inc.*, 168 F.3d 417 (11th Cir 1999); *Malone vs. K-Mart Corp.*, 51 F.Supp.2d. 1287 (M.D.Ala. 1999).

Plaintiff made numerous internal complaints about the racial harassment to her supervisors, including Densel. Plaintiff then made a formal complaint of racial harassment and discrimination to her supervisors (Penny Passmore, the CNP Supervisor, and Jeff Adams, the Personnel Director) during a meeting on November 9, 2004. These same decision-makers, along with Densel, her immediate supervisor, decided to terminate Plaintiff on November 10, 2004, one day after her formal complaint. It is undisputed that Densel and Passmore (with support from Adams and Sparks) made the decision to terminate Plaintiff the day after her formal complaint of discrimination and harassment.

The defendants showed favoritism to the black harasser, Betty Cliatt, by terminating Plaintiff

and allowing Cliatt to continue her employment without any discipline. It is clear that because of the racial issues that involved Plaintiff's race and the complaints that she made regarding race were the motivating factors in the decision to terminate her. Defendants determined it would be easier to terminate Plaintiff than address her concerns about a racially hostile work environment.

Despite her complaints, the racial harassment continued until the end of Plaintiff's employment. Although the formal decision to terminate (or non-renew) Plaintiff was not finalized until the end of the school year in May 2005, the actual decision was made one day after her formal complaint. The Defendants failed to conduct any independent investigation into Plaintiff's complaints and decided to terminate Plaintiff rather than deal with her concerns. Plaintiff contends that the Phenix City Board of Education has inadequate policies regarding race discrimination and racial harassment. Because of the inadequate policies the discrimination against Plaintiff continued for almost two years and continued despite Plaintiffs complaints. Plaintiff was replaced by a black female. The undisputed facts indicate that Plaintiff has stated a proper claim for hostile work environment.

Plaintiff requests a jury trial and seeks relief in the forms of:

a. A declaratory judgment that the employment policies and practices, and customs of the Defendants are violative of Plaintiff's Civil Rights.

b. A permanent injunction enjoining the Defendants, their agents, successors, attorneys and those acting in concert with the Defendants from continuing to violate Plaintiff's Civil Rights.

c. An Order requiring the Defendants to make the Plaintiff whole by awarding her, nominal damages, compensatory damages, and any and all other damages allowed

     by law.

d. Any and all other relief and benefits as the cause of justice may require, including but not limited to an award of costs, attorneys' fees and expenses.

**b.**     **Contentions of Defendants:**

a. Defendants are not guilty of alleged discrimination.

b. Defendants are not guilty of allowing a discriminatory abusive work environment.

c. Plaintiff has failed to mitigate her damages.

d. Plaintiff did not give notice or make any complaints to her immediate supervisors, her building principal or assistant principal, the CNP supervisor or Defendants regarding a hostile or abusive work environment. Plaintiff failed to take advantage of the preventive and corrective opportunities available to her.

e. Plaintiff did not give notice or make any complaints regarding an alleged hostile work environment until, assuming for the sake of argument, November 9, 2004, when she met with Mrs. Passmore and Mr. Adams.

f. Following the November 9, 2004 incident, Plaintiff failed to file any written document setting forth the details of her allegations of working in a hostile work environment as requested by Jeff Adams. Plaintiff failed to take advantage of the preventive and corrective opportunities available to her.

g. Plaintiff told at least one other cafeteria worker, and perhaps others, that the reason for her non-renewal was the hostile and abusive actions of her husband during the meeting with Mr. Adams on November 9, 2004.

h. Co-worker Betty Cliatt did not treat the Plaintiff any differently than she treated her

        other co-employees.

i. Betty Cliatt denies the Plaintiff's allegations against her.

j. All of the cafeteria workers talked, laughed, joked, cut up, argued, disagreed and "picked on" each other during work hours.

k. Plaintiff joined in and participated in the talking, laughing, joking, cutting up, arguing, disagreeing and "picking on" with her co-workers.

l. Assuming, for the sake of argument, that Plaintiff did report her allegations against Betty Cliatt to her Manager, Brenda Densel, and/or her Assistant Manager, Paula Pricthett, Plaintiff refused to cooperate with either of them in investigating Plaintiff's allegations. Plaintiff refused to allow them to investigate her allegations. Plaintiff failed to take advantage of the preventive and corrective opportunities available to her.

m. Plaintiff would not allow her Manager and/or Assistant Manager to arrange a meeting between her and Betty Cliatt to address any allegations Plaintiff had against Betty Cliatt. Plaintiff failed to take advantage of the preventive and corrective opportunities available to her.

n. Betty Cliatt was "just Betty" in her treatment of all of the cafeteria workers. That was the way Betty was, and all of the cafeteria workers knew it and accepted Betty.

o. Plaintiff's workplace was not "permeated with discriminatory intimidation, ridicule, and insult so severe or pervasive that it altered the conditions of her employment thereby creating an abusive working environment." Therefore Plaintiff cannot prove one of the elements of a hostile work environment.

p.  A reasonable person would not find that Betty Cliatt's alleged treatment of Plaintiff was hostile and/or abusive or interfered with her job performance.

q.  Betty Cliatt's alleged actions against Plaintiff were not frequent, severe, physically threatening or humiliating.

r.  Betty Cliatt's alleged actions against Plaintiff did not unreasonably interfere with Ms. Hutchinson's job performance.

s.  Betty Cliatt's alleged actions against Plaintiff were not racially motivated.

t.  Plaintiff failed to present her allegations regarding a hostile or abusive work environment in her complaint to the Equal Employment Opportunity Commission, and therefore, has failed to exhaust her administrative remedies as required by law and is precluded from raising such new and unrelated issues for the first time in this action.

u.  Plaintiff is not entitled to recover under her claims against Defendants on the basis of *respondeat superior* based on 42 USC §1981 by and through §1983 and the Fourteenth Amendment by and through §1983. She cannot prove a custom or practice of the Board or DiChiara which caused a deprivation of her federal rights; she cannot prove deliberate indifference by Defendants to her federal rights; and she cannot prove a causal connection between Defendants' actions and her allegations of a hostile or abusive work environment.

v.  Defendants are not "vicariously" liable for the alleged hostile work environment because the alleged actions were not done by a supervisor of Plaintiff but by a co-worker, Betty Cliatt. Therefore, Plaintiff cannot prove one of the elements of a

|   |   |
|---|---|
|   | hostile work environment, namely that Defendants are "vicariously" liable for the alleged conduct of Betty Cliatt. |
| w. | Defendants are not "directly" liable for the alleged hostile work environment based on the actions of Betty Cliatt, a co-worker, because they did not have actual knowledge or constructive knowledge that the conduct was so severe and pervasive. Defendants did not know and had no reason to know of the harassing conduct. Therefore, Defendants could not take prompt remedial action. Therefore, Plaintiff cannot prove one of the elements of a hostile work environment, namely that Defendants are "directly" liable for the alleged conduct of Betty Cliatt. |
| x. | Plaintiff was not "exposed to disadvantageous terms or conditions of employment" to which the African-American cafeteria workers were not exposed. Plaintiff must show that the African-American cafeteria workers were treated differently and better. Therefore, Plaintiff cannot prove one of the elements of a hostile work environment, namely that the alleged conduct of Betty Cliatt was "based on" Plaintiff race, Caucasian. |
| **5.** | **STIPULATIONS BY AND BETWEEN THE PARTIES** |
| a. | The Plaintiff, Elizabeth Lynne Hutchinson (hereinafter referred to as "Hutchinson") is a white female. |
| b. | The Defendant, Phenix City Board of Education (hereinafter referred to ("Board") is a local agency of the State of Alabama duly constituted pursuant to *§16-11-1 et seq., Ala. Code* and is charged with the duty and responsibility of employment and |

        dismissal of all school personnel subject to state and federal laws.

c.      The Defendant, Larry E. DiChiara (hereinafter referred to as "DiChiara") is a white male and is currently employed by the Defendant, Board as its Superintendent.

d.      The employment application which Hutchinson completed contained at the top right corner of the first page, the statement "Discrimination on the basis of race, sex, ethnic origin, creed or physical disability is prohibited."

e.      Hutchinson was initially hired by PCBOE for the school year 2003-2004, with a beginning employment date of July 30, 2003 and an ending employment date of May 19, 2004. Her job title was child nutrition program worker (hereinafter referred to as "CNP") assigned to South Girard School.

f.      The manager of South Girard Cafeteria for the school year 2003-2004 was Beverly Walker, a black female, now deceased. The Assistant Manager for that location and that year was Dorothea McKissic, a black female.

g.      Hutchinson was re-employed for the school year 2004-2005 to continued serving as a CNP worker at South Girard School. Her dates of employment were July 2004 through May 19, 2005.

h.      The Cafeteria Manager of South Girard School for the 2004-2005 school year was Brenda Densel, (hereinafter referred to as "Densel") a white female. The Assistant Cafeteria Manager for that location and that year was Paula Pritchett, (hereinafter referred to as "Pritchett"), a white female.

i.      For the school year 2003-2004, Hutchinson was one of two white CNP workers without supervisory duties at South Girard and was supervised by a black Manager

and black Assistant Manager.

j. For the school year 2004-2005, Hutchinson was the sole white CNP worker without supervisory duties at South Girard School, and was supervised by a white Manager and white Assistant Manager.

k. Hutchinson received an injury to her finger on November 9, 2004, while working in the cafeteria at South Girard School. She was taken to the Board's Central Offices by her Manager Densel, and was seen by the school nurse; rendered treatment; and returned to South Girard School.

l. Later in the afternoon of November 9, 2004, Hutchinson returned to the Board's Central Offices with her husband, Will McCart, (hereinafter referred to as "McCart") and met with Penny Passmore, (hereinafter referred to as "Passmore") a white female, who was the Supervisor of CNP Programs and Jeff Adams, (hereinafter referred to as "Adams") a white male (now deceased), who was Assistant Superintendent of Personnel.

m. Hutchinson's employment was not renewed by the Board at its official meeting on May 12, 2005.

n. Hutchinson's last day of employment was May 19, 2005.

o. Hutchinson was a probationary employee under *§36-26-100 et seq., Ala. Code* (also known as the Fair Dismissal Act).

p. At the end of May or first of June of 2005, following her non-renewal, Hutchinson and her husband, McCart, went to DiChiara's office and met with him.

q. Board Policy GAAA is entitled "Equal Opportunity Employment" and provides that

> ". . . no person . . . shall, on the basis of . . . race . . . be denied the benefits of, or be subject of discrimination in regard to employment, retention, promotion, transfer, or dismissal. . . ."

r.  Plaintiff was replaced by a black female, Mary Carter.

It is ORDERED that:

1. The jury selection and trial of this cause, which is to last three (3) days, are set for June 23, 2008 commencing at 10:00 a.m., at the United States Courthouse in Opelika, Alabama;

2. A trial docket will be mailed to counsel for each party approximately 3 weeks prior to the start of the trial term;

3. Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, and the judge to each have a set of the exhibits;

4. Trial briefs are required to be filed by June 8, 2008. Responsive briefs may be filed by June 16, 2008.

5. The parties are Directed to file new witness lists, exhibit lists, and deposition excerpt designations by June 4, 2008. Opposing parties are given until June 9, 2008 to file any objections they may have, with briefs stating grounds and supporting authorities. In the absence of objections by that time, any objections will be waived.

6.      All deadlines not otherwise affected by this order will remain as set forth in the Uniform Scheduling Order entered by the court.

7.      All understandings, agreements, deadlines, and stipulations contained in this Pretrial Order shall be binding on all parties unless this Order be hereafter modified by Order of the Court.

Done this 30th day of May, 2008.

_____
SENIOR UNITED STATES DISTRICT JUDGE
W. HAROLD ALBRITTON